**CARPETLAND U.S.A.,**
Defendant–Appellant,

v.

**Bezzel PAYNE, Plaintiff–Appellee.**

No. 49A02–8810–CV–376.

Court of Appeals of Indiana,
First District.

April 10, 1989.

William J. Tucker, Klineman, Rose, Wolf and Wallack, Indianapolis, for defendant-appellant.

Ben F. Hatfield, Coates, Hatfield, Calkins and Wellnitz, Indianapolis, for plaintiff-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Carpetland, U.S.A. appeals the judgment of the trial court awarding Bezzel Payne $1,387.96 in damages resulting from Payne's purchase of allegedly defective carpet. We affirm.

## FACTS

On November 10, 1986, Payne went to Carpetland for the purpose of purchasing carpeting for a house she and her husband owned in which her son, his girlfriend, and their children resided. Payne was assisted by Brad Lewis, a Carpetland sales representative. Payne claimed that Lewis informed her that the carpeting came with a one-year warranty.

Payne entered into an agreement with Carpetland for the sale and installation of a carpet and pad. The total contract price was $2,387.96 including the carpet, pad, installation and taxes. This agreement contained an express provision denying the existence of all express or implied warranties including warranties of merchantability or fitness for a particular purpose.

The carpet and pad were installed approximately ten (10) days after purchase. Three or four weeks later the pile or nap of the carpet started coming loose creating bald spots. Payne complained about the condition of the carpet, and Carpetland sent a carpet installer to inspect the problem. The installer cut off the loose strings with a razor blade and advised Payne's son to cut off any additional loose strings by the same method. The condition of the carpet continued to deteriorate. Payne made a number of complaints, and each time a carpet installer was sent to inspect the problem.

Carpetland refused to replace the carpeting, and on July 23, 1987, Payne filed a complaint against Carpetland in small claims court alleging that Carpetland sold her "defective carpet". Record at 4. Carpetland denied Payne's claim. After a trial on the merits, the trial court entered judgment in favor of Payne for the total purchase price and costs.

## ISSUES

Carpetland raised three (3) issues on appeal which we have rephrased and renumbered as follows:

1. Was there sufficient evidence to support the trial court's judgment in favor of Payne?

2. Were the damages awarded Payne excessive?

## DISCUSSION AND DECISION

Before addressing the issues raised by Carpetland, we will comment upon preliminary matters raised in Payne's appellee's brief and which we have felt compelled to raise *sua sponte*. Carpetland's brief argues this case wholly in terms of a breach of contract suit. Payne contends, and we agree, that the record clearly reveals that this action was tried under a breach of warranty theory. We are fully aware that warranties, while collateral to the principal purposes of a contract, are nonetheless part of that contract. *Aamco Transmission v. Air Systems, Inc.* (1984), Ind. App., 459 N.E.2d 1215, 1217, *trans. denied, quoting, McCarty v. Williams* (1914), 58 Ind.App. 440, 445, 108 N.E. 370, 372. However, we are equally cognizant of the fact that a body of law uniquely suited to warranty issues has evolved in this state, and contrary to Carpetland's characterization of the suit, we will address the issues raised herein according to those principles.

In the present case Payne testified that Brad Lewis informed her that the carpet she eventually purchased was guaranteed for one year. Because this affirmation was made orally and was not contained in a writing intended as a final expression of the agreement, whether the statement amounts to an express warranty is a question of fact. *Art Hill, Inc. v. Heckler* (1983), Ind.App., 457 N.E.2d 242, 244, *trans. denied.* From its judgment, apparently the trial court found that Lewis's assurance constituted an express warranty. Indiana Code section 26–1–2–313 which defines the language by which an express warranty may be created reads as follows:

"Express warranties by affirmation, promise, description, sample

"Sec. 313. (1) Express warranties by the seller are created as follows:

(a) any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

This statute requires some representation, terms or conditions or some definite statement as to how a product is warranted. *Candlelight Homes, Inc. v. Zornes* (1981), Ind.App., 414 N.E.2d 980, 983. Payne testified, "I just asked him [Lewis], uh, how long—was there a warranty with it, and he said a year. If anything went wrong, they would replace it, and then he didn't replace it." Record at 39. After Payne admitted that she did not read any written warranties, the following colloquy took place:

"Q. Did he [Lewis] tell you—what did he tell you about a warranty?

"A. He said it was warranty [sic] anything that went wrong within a year that they would lay the carpet, it being new carpet. He said it was good carpet, so it wasn't good.

"Q. So you're saying that he said that whatever went wrong that new carpet would be installed?

"A. It was guaranteed for a year if anything went wrong."

Record at 40. Carpetland's sales representative's assertion may have been broad in scope, but Lewis unambiguously assured Payne that Carpetland would replace the carpet if any defects in the carpet surfaced within one year of purchase. It is our opinion that Lewis's assertion was sufficient to create an express warranty.

■ Additionally, in order for the seller's assurances to constitute an express warranty under the statute, the assurance must constitute a promise which was part of the basis of the purchase agreement. *Art Hills*, 457 N.E.2d at 245. In order to prove that Lewis's assertion was part of the basis for the bargain, Payne need not show that she relied on Lewis's statement. *Cf. Shambaugh v. Lindsay* (1983), Ind. App., 445 N.E.2d 124, 126–27. Payne need only show that the warranty was entered into the contract as an intended element thereof, and as a part of the consideration for the purchase price. *Id.* at 127, *quoting McCarty v. Williams* (1915), 58 Ind.App. 440, 445–46, 108 N.E. 370, 372. In *McCarty* the court stated:

"It is not necessary that it should be true that the buyer would not have purchased but for the warranty. If, in addition to the transfer of the property he can, for the same price or for a greater price, obtain the seller's agreement to insure the quality of the goods, such agreement goes with the goods as a part of the consideration, and the buyer is entitled to the benefit of his bargain in this regard, whether he would or would not have bought the goods without this additional consideration."

58 Ind.App. at 445, 108 N.E. at 372. Lewis made certain factual assertions while bargaining with Payne, and we cannot say that the trial court erred in refusing to deny Payne the benefit of her bargain.

Having determined that Lewis's statement constituted an express warranty, we must next examine whether or not the disclaimer contained in the purchase agreement constitutes a bar to Payne's recovery based upon breach of this express warran-

ty. We are persuaded that the disclaimer does not constitute any such bar.

■ On the reverse side of the sales contract, printed in light grey capital letters, the following disclaimer appears:

"EXCEPT FOR DESCRIPTION ON REVERSE SIDE HEREOF, BUYER ACKNOWLEDGES THAT NO EXPRESS OR IMPLIED WARRANTIES (INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS) HAVE BEEN MADE BY SELLER AND SELLER HEREBY DISCLAIMS ALL SUCH WARRANTIES. THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE FACE HEREOF."

Record at 25. Indiana Code section 26–1–2–316(1) governing the exclusion or modification of warranties reads as follows:

"Sec. 316. (1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of IC 26–1–2–202 on parol or extrinsic evidence, negation or limitation is inoperative to the extent that such construction is unreasonable."

If an express warranty and a disclaimer of an express warranty exist in the same sale, an irreconcilable conflict emerges. *Woodruff v. Clark County Farm Bureau Coop. Ass'n* (1972), 153 Ind.App. 31, 52, 286 N.E. 2d 188, 200. If it is unreasonable or impossible to construe the language of an express warranty and the language of a disclaimer as consistent, the disclaimer becomes inoperative. *Art Hill*, 457 N.E.2d at 245; *Jones v. Arbriani* (1976), 169 Ind.App. 556, 572, 350 N.E.2d 635, 645; *Woodruff*, 153 Ind.App. at 52, 286 N.E.2d at 200.

■ In the present case Lewis's assertion that the carpet was guaranteed for one year and the disclaimer which purported to negate all express warranties were clearly inconsistent. As in *Woodruff*, the seller was running "both with the hares and the hounds and in so doing creat[ed] an ambiguity." 153 Ind.App. at 52, 286 N.E.2d at 200. Therefore, the disclaimer is deemed inoperative and its existence cannot stand as a bar to Payne's recovery.[1]

---

**1.** We are aware that this holding seemingly ignores the parol evidence provision of Indiana Code section 26–1–2–202 which reads as follows:

"Sec. 202. Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented.

"(a) by course of dealing or usage of trade (section 1–205) or by course of performance (section 2–208); and

"(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

Authority is split on the issue of whether or not the parol evidence rule should bar the admission into evidence of a prior oral express warranty. According to White and Summers, prior oral express warranties should be admitted into evidence only where the written agreement was not intended by the parties to be the final expression of their agreement, or where the writing is not considered to be a complete and exclusive statement of the terms of the contract. J. White and R. Summers *Uniform Commercial Code* 567–68 (3rd ed. 1988). In support of this position, White and Summers note that according to Comment 2 to section 2–316 the reference made in this section to the parol evidence rule is intended to protect the seller against false allegations of oral warranties.

However, Comment 1 to section 2–316 states that this section, "seeks to protect a buyer from unexpected and unbargained language of disclaimer by denying effect to such language when inconsistent with language of express warranty ..." In keeping with this pro-consumer sentiment, King and Duesenberg suggest that the very existence of a prior oral express warranty indicates that the writing itself was not intended to be the final expression of the parties. 3 *U.C.C. Serv. Sales and Bulk Transfers* (Bender) § 6.06, at 6–14 (1988). Therefore, whenever a prior oral express warranty is contradicted by a written disclaimer, the parol evidence rule as codified 26–1–2–202 would have no effect on the analysis, and evidence of the oral warranty should be admitted. *Cf. Id.* Indiana courts have apparently adopted the latter view finding it unnecessary to evaluate the written agreement to determine whether or not it was a final expression of the parties' intent before abandoning the parol evidence rule and hearing evidence of prior oral express warranties. *See Art Hill*, 457 N.E.2d at 245; *Jones*, 169 Ind.App. at 572, 350 N.E.2d at 645; *Woodruff*, 153 Ind.App. at 52, 286 N.E.2d at 200.

*Issue One*

Carpetland contends that the evidence presented at trial was insufficient to support the trial court's judgment. Carpetland's contention is two-fold. Carpetland first claims that Payne failed to present any evidence indicating that the defective condition of the carpet was due to any act or omission on the part of Carpetland. Carpetland also claims that the trial court erred in allegedly shifting the burden of proof and requiring Carpetland to demonstrate that the defects in the carpet occurred for some reason other than an act or omission on the part of Carpetland. Our standard of review on sufficiency of the evidence questions is well settled. We will neither reweigh the evidence nor reassess the credibility of witnesses. *Aamco Transmission,* 459 N.E.2d at 1217. If there is evidence of probative value to sustain the trial court, its judgment will not be disturbed. *Id.*

■ Carpetland correctly notes that any action based upon breach of warranty requires evidence showing not only the existence of the warranty but that the warranty was breached and that the breach was the proximate cause of the loss sustained. *Richards v. Goerg Boat and Motors, Inc.* (1979), 179 Ind.App. 102, 109, 384 N.E.2d 1084, 1090. However, Carpetland incorrectly characterizes the events constituting a breach of warranty in the present case. Contrary to Carpetland's contention, Payne was not required to demonstrate that the defects in the carpet resulted from an act or omission on the part of Carpetland. Lewis told Payne that the carpet would be replaced if any defects arose within the first year; this express warranty was not limited to only those defects caused by an act or omission by Carpetland. The language used by Lewis indicates that the mere fact the carpet was defective constituted a breach of warranty. Furthermore, the defective carpet was the direct source of Payne's loss. Therefore, the breach of warranty, the defective carpet, was clearly the cause of the loss sustained by Payne.

Given our recharacterization of the definition of breach within the facts of the present case, Carpetland's argument concerning the trial court's alleged shifting of the burden of proof is specious. Payne needed to do no more than show that the carpeting was defective and that Carpetland refused to replace it. The record reveals that Payne was successful in demonstrating these elements at trial. In order for Carpetland to escape the promises made by its salesman, Carpetland would have to show that: (1) the carpet was not defective; or that (2) Carpetland had replaced the defective carpet as promised. Carpetland failed to even attempt such a showing. Therefore, the evidence presented at trial was sufficient to support the judgment of the trial court.

*Issue Two*

Carpetland next alleges that the trial court's damage award of the contract price was excessive. When the issue on review relates to questions of inadequate or excessive damages, a damage award should not be reversed if it is within the scope of the evidence before the trial court, and the reviewing court may not reweigh the evidence or assess the credibility of witnesses. *Dunn v. Cadiente* (1987), Ind., 516 N.E.2d 52, 54; *Persinger v. Lucas* (1987), Ind. App., 512 N.E.2d 865, 866. Thus, to prevail on their contention that the damages should be modified, Carpetland must show that the award was clearly erroneous or contrary to law. *Davis v. Eagle Prod., Inc.* (1987), Ind.App., 501 N.E.2d 1099, 1108.

Carpetland argues that since only the carpet was found to be defective, Payne should be allowed to recover only that part of the purchase price representing the cost of the carpet. According to Carpetland, allowing Payne to recover any amount over the cost of the carpet itself would amount to granting Payne a windfall profit. We disagree. Indiana Code section 26–1–2–714(2) provides:

"The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances

show proximate damages of a different amount."

The owner of a good is competent to testify as to its value. *Don Meadow Motors, Inc. v. Grauman* (1983), Ind.App., 446 N.E.2d 651, 654. Furthermore, the purchase price is admissible as evidence of the value of the good as warranted. *Id.*

Any benefit Payne obtained through the installation efforts and receipt of the carpet pad was totally dependent upon the installation of a nondefective carpet. As Payne testified, the defective carpet actually installed had no value to her whatsoever. It is our opinion that the damage award was within the scope of the evidence. The trial court did not err in awarding Payne the entire purchase price.

Affirmed.

CONOVER, P.J., and ROBERTSON, J., concur.