GUIDEONE INSURANCE CO., as Subrogee of Andrew Alexander and Michael Schafstall, Appellant/Cross–Appellee/Plaintiff,

v.

U.S. WATER SYSTEMS, INC., Appellee/Defendant,

and

Lowe's Home Centers, Inc., Appellee/Cross–Appellant/Defendant.

No. 49A05–1009–CT–569.

Court of Appeals of Indiana.

June 8, 2011.

Carolyn Small Grant, Robert G. Grant, Grant & Grant, Indianapolis, IN, Attorneys for Appellant/Cross–Appellee Guideone Insurance Company.

Willis E. Huiras, Huiras Law, Indianapolis, IN, Attorney for Appellee U.S. Water Systems, Incorporated.

Mark D. Gerth, Jennifer M. Herrmann, Matthew D. Bruno, Kightlinger & Gray, LLP, Indianapolis, IN, Attorneys for Appellee/Cross–Appellant Lowe's Home Centers Incorporated.

## OPINION

BRADFORD, Judge.

Appellant/Cross–Appellee/Plaintiff Guideone Insurance Company appeals the trial court's order granting partial summary judgment in favor of Appellee/Cross–Appellant/Defendant Lowe's Home Centers, Inc. Guideone also appeals the trial court's order dismissing Guideone's claims against Appellee/Defendant U.S. Water Systems Inc. On cross-appeal, Lowe's contends that the trial court abused its discretion in making certain evidentiary rulings. Lowe's also contends that the trial court erred in granting partial summary judgment in favor of Guideone. We affirm in part, reverse in part, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

On May 8, 2006, homeowners Michael Schafstall and Andrew Alexander went to a Lowe's store to purchase a reverse osmosis drinking water filtration system

("water system"). At some point prior to completing the purchase, Schafstall and Alexander obtained a half-sheet flyer that read as follows:

> All installation services are guaranteed by Lowe's warranty.
>
> Customer will receive any warranty provided by a manufacturer of the goods installed. Lowe's warrants that the installation services will be performed by an independent subcontracted installer in a good and workmanlike manner. Lowe's warranty for installation services shall extend for a period of one year from the date the certificate of completion is signed by customer or for such greater period as may be required by applicable law.
>
> See Installed Sales Contract or Presentations Folders for details.

Appellant's App. p. 63.

In completing the purchase of the water system, Schafstall signed an Indiana Itemized Installed Sales Contract ("Sales Contract"), as well as an Addendum to Installed Sales Contract ("Addendum"). The Addendum set forth the detailed warranty terms, and provided, in relevant part, as follows:

> Lowe's does warrant that the Installation services will be performed by the Installer in a good and "workmanlike manner." Lowe's warranty for Installation Services shall extend for a period of one year from the date the Certification of Completion is signed by Customer.... Customer agrees that its sole and exclusive remedy against Lowe's for a warranty claim is reinstallation in a good and workmanlike manner, including the repair and replacement of any Goods if and to the extent reasonably necessary to correct the defective Installation Services. **Customer shall have no warranty claim or remedy against Lowe's for** loss or damage caused by normal wear or tear, loss or damage which had not been reasonably mitigated, loss or damage caused by acts of God, incidental or consequential damages for lost profits, sales, injuries to persons or property, or **any other incidental or consequential damages.**

Appellee Lowe's App. p. 15 (emphasis added).

Lowe's contracted with U.S. Water to install the water system in Schafstall and Alexander's home. The water system was installed on May 17, 2006. Approximately twelve hours later, Schafstall and Alexander awoke to the sound of running water. Schafstall and Alexander found that the water supply line was disengaged from the water system, and that water was "flowing out" onto the kitchen floor. Appellant's App. p. 34.

The next day, U.S. Water employee Gregg Adams came to Schafstall and Alexander's home. Adams opined that the water system was installed correctly and that the "leak" was caused by a "fitting failure." Appellant's App. p. 35. The leak resulted in approximately $115,000 in water damage to Schafstall and Alexander's home. Guideone compensated Schafstall and Alexander for the damage pursuant to the terms of their homeowner's insurance contract, and on November 9, 2006, Guideone filed suit against Lowe's and U.S. Water seeking to recoup the $115,000 paid to Schafstall and Alexander.

Louis Inendino, a registered professional engineer employed by Rimkus Consulting Group, hooked the water system up to the water line in his office in Indianapolis for a period of one week beginning on June 15, 2010. On July 20, Guideone filed its Second Motion for Summary Judgment relating to the issue of liability, arguing that Lowe's should be held liable as a matter of law because it had breached its

warranty that the water system would be installed in a good and workmanlike manner. On July 30, 2010, Lowe's filed a Motion for Partial Summary Judgment relating to the scope of its potential liability, arguing that consequential damages were not available under the specific terms of the warranty, and as a result, its potential liability should be limited to the replacement cost of the water system. On August 16, 2010, U.S. Water filed a Motion to Dismiss, arguing that the economic loss doctrine precluded Guideone from recovering from U.S. Water.

On August 23, 2010, Lowe's moved to strike Indendino's affidavit, which Guideone had designated as evidence in support of its motion for summary judgment. On August 27, 2010, Guideone moved to strike the affidavit of U.S. Water President Mark Timmons, which Lowe's had designated as evidence in support of its motion for partial summary judgment. The trial court conducted a hearing on all pending motions on August 30, 2010.

On September 2, 2010, the trial court issued an order in which it (1) granted Guideone's motion for summary judgment relating to the issue of liability; (2) granted Lowe's motion for partial summary judgment relating to the scope of its liability; (3) granted in part and denied in part U.S. Water's motion to dismiss; (4) denied Lowe's motion to strike Indendino's affidavit; and (5) granted Guideone's motion to strike Timmons's affidavit. The trial court determined that U.S. Water was liable to Guideone in the amount $.01 and dismissed U.S. Water from the case. The trial court also determined that because the scope of Lowe's liability was limited to the value of the water system and its installation, Lowe's was liable to Guideone in the amount of $320 for the value of the water system and $.01 for the installation. This appeal follows.

## DISCUSSION AND DECISION

### I. Guideone's Claims on Direct Appeal

#### A. Whether Schafstall had the Authority to Bind Alexander to the Warranty Contract

Guideone maintains that the trial court erred in granting Lowe's motion for partial summary judgment and U.S. Water's motion to dismiss because one of its underlying co-insureds, Alexander, was not bound by the contract between Lowe's and Schafstall. Specifically, Guideone claims that Alexander was not bound by the warranty contract because he was not a party to the contract that was signed by Lowe's and Schafstall. Lowe's and U.S. Water, on the other hand, maintain that Alexander was bound by the warranty contract because in purchasing the water system, Schafstall acted as Alexander's agent, or at the very least, Alexander ratified the purchase.

#### 1. Actual or Apparent Authority

■ In general, a principal will be bound by a contract entered into by the principal's agent on his behalf only if the agent had authority to bind him. *Gallant Ins. Co. v. Isaac*, 751 N.E.2d 672, 675 (Ind.2001). The agent's authority to enter into a contract on his principal's behalf will typically be either actual or apparent. Actual authority exists when the principal has, by words or conduct, authorized the agent to enter into a contract for the principal. *Id.* Apparent authority, on the other hand, exists where the actions of the principal give the contracting party the reasonable impression that the agent is authorized to enter into an agreement on behalf of the principal. *Id.* The question of whether an agency relationship exists and of the agent's authority is generally a question of fact. *Johnson v. Blankenship*, 679 N.E.2d 505, 507 (Ind.Ct.App.1997),

*trans. granted and summarily affirmed,* 688 N.E.2d 1250 (Ind.1997).

*Heritage Dev. of Ind., Inc. v. Opportunity Options, Inc.,* 773 N.E.2d 881, 888 (Ind.Ct. App.2002). "It is well settled that the existence of an agency relationship or an agent's authority may not be predicated solely upon the declarations of the alleged agent." *Id.* However, "an agent's authority may arise by implication and may be shown by circumstantial evidence." *Id.*

■ The undisputed evidence demonstrates that Alexander was intimately involved in the purchase of the water system. Schafstall and Alexander went to Lowe's together, discussed the purchase with the Lowe's salesperson, and were both present when Schafstall completed the purchase and signed the warranty contract. The actions of Schafstall and Alexander could reasonably give Lowe's the impression that Schafstall was authorized to enter into the warranty contract on behalf of Alexander.

### 2. Ratification

■ However, even if the Schafstall did not have actual or apparent authority to purchase the water system on Alexander's behalf and bind Alexander to the warranty contract, Alexander would still be bound by the terms of the warranty contract if he subsequently ratified the contract. A principal will be bound by a contract entered into by the principal's agent on his behalf regardless of the agent's lack of authority if the principal subsequently ratifies the contract as one to which he is bound. *Id.* at 889. Very generally, ratification may be express, where the principal explicitly approves the contract, or implied, where the principal does not object to the contract and accepts the contract's benefits. *Id.* This Court has explained the concept of ratification more particularly:

Ratification means the adoption of that which was done for and in the name of another without authority. It is in the nature of a cure for [lack of] authorization. When ratification takes place, the act stands as an authorized one, and makes the whole act, transaction, or contract good from the beginning. Ratification is a question of fact, and ordinarily may be inferred from the conduct of the parties. The acts, words, silence, dealings, and knowledge of the principal, as well as many other facts and circumstances, may be shown as evidence tending to warrant the inference or finding of the ultimate fact of ratification.... Knowledge, like other facts, need not be proved by any particular kind or class of evidence, and may be inferred from facts and circumstances.

*Id.* at 889–90 (internal quotation omitted). An agency relationship is not a prerequisite for ratification. *Beneficial Mortg. Co. of Ind. v. Powers,* 550 N.E.2d 793, 796 (Ind.Ct.App.1990). Knowledge of all the material facts by the person to be charged with the unauthorized acts of another is an indispensable element of ratification. *Id.*

Here, the undisputed evidence demonstrates that in its complaint, Guideone alleged that Lowe's had a duty to its insureds, Alexander and Schafstall, to use reliable, skilled workmen who could perform the installation of the water system; that Lowe's breached this duty to the insureds; that U.S. Water had a duty to the insureds to perform its work skillfully, carefully, and in a workmanlike manner; and that U.S. Water breached this duty to the insureds. Likewise, in its motion for summary judgment on the issue of Lowe's liability, Guideone asserted that its insureds, Alexander and Schafstall, purchased a water system from Lowe's; that Lowe's gave the insureds a warranty for the installation providing that installation

services would be performed in a "good and workmanlike manner[;]" that Lowe's had the insureds' water system installed; that the water system failed, flooding the insureds' home; that U.S. Water returned to the insureds' home to observe the flood damage; and that Lowe's breached its warranty to the insureds. Additionally, Alexander's statements support the inference that Schafstall was authorized to purchase the water system on his behalf. Alexander averred that on May 8, 2006, he and Schafstall purchased a water system for their home from Lowe's, and Lowe's had U.S. Water install "our" water system in our home on May 17, 2006. Appellant's App. p. 34. Upon review of the undisputed evidence and testimony presented before the trial court, we conclude that, in the very least, Alexander ratified the contract and thus is bound by its terms.

### B. Whether the Trial Court Erred in Granting U.S. Water's Motion to Dismiss

Guideone contends that the trial court erred when it granted U.S. Water's Trial Rule 12(B)(6) motion to dismiss for failure to state a claim.

In reviewing a motion to dismiss granted pursuant to Trial Rule 12(B)(6), our standard of review is well settled. *Burke v. Town of Schererville*, 739 N.E.2d 1086, 1090 (Ind.Ct.App.2000). A 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim, not the facts supporting it. *Id.* Therefore, we view the complaint in the light most favorable to the non-moving party, drawing every reasonable inference in favor of that party. *Id.* at 1091. In reviewing a ruling on a motion to dismiss, we stand in the shoes of the trial court and must determine if the trial court erred in its application of the law. *Id.* The trial court's grant of a

motion to dismiss is proper if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. *Id.* In determining whether any facts will support the claim, we look only to the complaint and may not resort to any other evidence in the record. *Id.* Further, under notice pleading, a plaintiff need only plead the operative facts involved in the litigation. *Donahue v. St. Joseph County*, 720 N.E.2d 1236, 1239 (Ind.Ct. App.1999). The plaintiff is required to provide a "clear and concise statement that will put the defendants on notice as to what has taken place and the theory that the plaintiff plans to pursue." *Id.* *Godby v. Whitehead*, 837 N.E.2d 146, 149 (Ind.Ct.App.2005), *trans. denied.*

We apply a de novo standard of review to Guideone's appeal from the trial court's grant of U.S. Water's motion to dismiss for failure to state a claim. *Id.* (citing *Stulajter v. Harrah's Ind. Corp.*, 808 N.E.2d 746, 748 (Ind.Ct.App.2004)). A complaint cannot be dismissed under Trial Rule 12(B)(6) unless it appears to a certainty that the plaintiff would not be entitled to relief under any set of facts. *Id.* (citing *Schulz v. State*, 731 N.E.2d 1041, 1043 (Ind.Ct.App.2000), *trans. denied*). Further, when a trial court grants a motion to dismiss without reciting the grounds relied upon, it must be presumed upon review that the court granted the motion to dismiss on all the grounds in the motion. *Id.* (citing *Gorski v. DRR, Inc.*, 801 N.E.2d 642, 645 (Ind.Ct.App.2003)). Thus, our review includes an examination of the complaint and the arguments U.S. Water presented in its motion to dismiss. *See Id.*

Guideone claims that the trial court erred when it granted U.S. Water's motion to dismiss because one of its underlying co-insureds, Alexander, was not bound by the contract between Lowe's and Schaf-

stall. U.S. Water, on the other hand, maintains on appeal that the trial court's decision to dismiss Guideone's complaint was proper because Alexander was bound by the contract between Lowe's and Schafstall, and application of the economic loss doctrine precludes any recovery by Guideone. U.S. Water's Br. p. 9.

### 1. Whether Alexander was Bound by the Contract Between Lowe's and Schafstall

Guideone maintains that the trial court erred when it granted U.S. Water's motion to dismiss because Alexander was not bound by the contract between Lowe's and Schafstall. However, having concluded above that Alexander was bound by the contract between Lowe's and Schafstall, we conclude that Guideone's claim that the trial court erroneously dismissed its claims against U.S. Water must fail in this regard.

### 2. Whether the Economic Loss Doctrine Precludes any Recovery by Guideone

▪ ▬ U.S. Water maintains that the trial court properly dismissed Guideone's claims against it because the economic loss doctrine precludes any recovery by Guideone. Guideone argues that the nature of its losses take this case outside of the economic loss rule. Under the economic loss doctrine, a party may only recover the remedies provided by the contract following a failure of a product or service to perform as expected. *See Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 152 (Ind. 2005). Under this doctrine, "contract is the only available remedy 'where the loss is solely economic in nature, as where the only claim of loss relates to the product's failure to live up to expectations, and in the absence of damage to other property or person.'" *Id.* (quoting *Reed v. Central Soya Co.*, 621 N.E.2d 1069, 1074–75 (Ind. 1993)).

▬ "The economic loss rule is only implicated where a plaintiff has suffered 'pure economic loss.'" *Indpls.-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 731 (Ind. 2010). "Pure economic loss" means pecuniary harm not resulting from an injury to the plaintiff's person or property. *Id.* The Indiana Supreme Court has held that "where the loss is purely economic, and there is no damage to other property and no personal injury, the legislature has determined that the plaintiff's remedy lies in contract law." *Progressive Ins. Co. v. Gen. Motors Corp.*, 749 N.E.2d 484, 488 (Ind.2001). In *Reed*, the Indiana Supreme Court elaborated on what constitutes purely economic loss and defined economic damages under Indiana law as:

> the diminution in the value of a product and consequent loss of profits because the product is inferior in quality and does not work for the general purposes for which it was manufactured and sold.... Economic loss includes such incidental and consequential losses as lost profits, rental expense, and lost time.

621 N.E.2d at 1074. Damage to the product itself, including costs of its repair or reconstruction, is an "economic loss" even though it may have a component of physical destruction. *Gunkel*, 822 N.E.2d at 154.

▬ Indiana general negligence law provides that damage from a defective product or service may be recoverable under a tort theory if the defect causes personal injury or damage to other property. However, "[e]conomic losses are not recoverable in a negligence action premised on the failure of a product to perform as expected unless such failure causes personal injury or physical harm to property other than the product itself." *Id.* at 154

(quotation omitted). "If a buyer were allowed to recover economic loss under a negligence theory, he could, in effect, circumvent the seller's limitations or exclusion of warranties permitted under the Uniform Commercial Code." *Progressive Ins. Co.*, 749 N.E.2d at 488 (quotation omitted).

Because the "economic loss" doctrine permits tort recovery only for personal injury or damage to "other property," if property is damaged it is necessary to identify the product at issue which defines "other" property. The subject of "other property" has been approached in a number of different ways. Much of the law addressing the issue of what constitutes "other property" deals with whether the other property is a distinct item or merely a component of the overall defective product. Other courts have focused on whether "goods" are involved. Yet others have concluded that the economic loss doctrine precludes recovery for injury to "other property" if the injury was, or should have been, reasonably contemplated by the parties to the contract. Some have concluded that the "product" is the product purchased by the plaintiff, not the product sold by the defendant.

*Gunkel*, 822 N.E.2d at 154. "If property is sold to the user as part of the finished product, the consequences of its failure are fully within the rationale of the economic loss doctrine ... [and] therefore is not 'other property.'" *Id.* at 155. "Property acquired separately from the defective good or services is 'other property,' whether or not it is, or is intended to be, incorporated into the same physical object." *Id.*

Here, Guideone seeks to recover monetary damages incurred by its subrogors, Schafstall and Alexander, after Schafstall and Alexander suffered water damage to their home as a result of an apparent failure of the water system purchased from Lowe's by Schafstall and Alexander. Lowe's subcontracted with U.S. Water to install the water system. The apparent failure and loss occurred less than twelve hours after representatives for U.S. Water installed the water system, and resulted in flooding that caused over $100,000 in damage to the lower level of Schafstall's and Alexander's home. Guideone subsequently filed suit against Lowe's and U.S. Water alleging that the parties were in breach of the warranty guarantee issued by Lowe's that the water system would be installed in a "good and workmanlike manner" because the water system was negligently installed. Appellant's App. pp. 16–17.

While we agree with U.S. Water that the economic loss doctrine would preclude recovery by Guideone for damage to the water system itself, we conclude that the "other property" exception to the economic loss doctrine would permit tort recovery for the flood damage to Schafstall and Alexander's home because the damaged floor, walls, etc. were acquired separately from the water system and were not merely a component of the water system, but rather were separate, distinct items. *See Gunkel*, 822 N.E.2d at 156–57; *Indpls.-Marion Cnty. Pub. Library*, 929 N.E.2d at 732. Because the flood damage that resulted from the apparent failure of the water system resulted in physical damage to "other property," we conclude that Guideone raised a claim under which it could potentially recover, and, as such, the trial court erred in granting U.S. Water's motion to dismiss.[1] *See Godby*, 837 N.E.2d at 149.

---

1. In reaching this conclusion, we make no comment as to whether Guideone's negligence claim will ultimately be successful, but only conclude that Guideone has raised a claim under which it could potentially recover.

## C. Whether the Trial Court Erred in Granting Lowe's Motion for Partial Summary Judgment

Guideone also contends that the trial court erred in granting partial summary judgment in favor of Lowe's because Alexander was not bound by the contract between Lowe's and Schafstall, and also because the language limiting Lowe's express warranty was inoperative.

> Pursuant to Rule 56(C) of the Indiana Rules of Trial Procedure, summary judgment is appropriate when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. When reviewing a decision to grant summary judgment, this court applies the same standard as the trial court. *Best Homes, Inc. v. Rainwater*, 714 N.E.2d 702, 705 (Ind.Ct.App.1999). We must determine whether there is a genuine issue of material fact requiring trial, and whether the moving party is entitled to judgment as a matter of law. *Id.* Neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court. *Id.*
>
> A party seeking summary judgment bears the burden to make a prima facie showing that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. *American Management, Inc. v. MIF Realty, L.P.*, 666 N.E.2d 424, 428 (Ind. Ct.App.1996). Once the moving party satisfies this burden through evidence designated to the trial court pursuant to Trial Rule 56, the non-moving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial. *Id.* A trial court's grant of summary judgment is "clothed with a presumption of validity," and the appellant bears the burden of demonstrating that the trial court erred. *Best Homes, Inc.*, 714 N.E.2d at 706 (quoting *Barnes v. Antich*, 700 N.E.2d 262, 264–65 (Ind.Ct. App.1998)).

*Heritage Dev.*, 773 N.E.2d at 887–88.

## 1. Whether Alexander was Bound by the Contract Between Lowe's and Schafstall

Again, Guideone maintains that the trial court erred when it granted Lowe's motion for partial summary judgment because Alexander was not bound by the contract between Lowe's and Schafstall. However, having concluded above that Alexander was bound by the contract between Lowe's and Schafstall, we conclude that Guideone's claim that the trial court erroneously granted partial summary judgment in favor of Lowe's must fail in this regard.

## 2. Whether the Language Limiting Lowe's Express Warranty Was Inoperative

▉▉▉▉▉ Guideone also contends that the trial court erred in granting partial summary judgment in favor of Lowe's because the language limiting Lowe's express warranty was inoperative. Specifically, Guideone claims that the limiting language was inoperative because the sales provisions of the Uniform Commercial Code ("UCC"), as codified at Indiana Code chapter 26–1–2 *et seq.*, allows for the recovery of consequential damages. Guideone also claims that the limiting language conflicted with Lowe's express warranty.

> A contract is thought to be the product of the free bargaining of the parties. *Fresh Cut, Inc. v. Fazli* (1994), Ind.App., 630 N.E.2d 575, 577. As a general rule, the law allows persons of full age and competent understanding the utmost liberty of contracting and their contracts, when entered into freely and voluntarily,

are enforced by the courts. *Id.* This is so because it is in the best interest of the public that persons should not be unnecessarily restricted in their freedom of contract. *Id.* Accordingly, the parties to a contract are free to include in the agreement any provisions they desire so long as such provisions do not offend the public policy of this state. *Id.*

*Pinnacle Computer Servs., Inc. v. Ameritech Pub., Inc.,* 642 N.E.2d 1011, 1013–14 (Ind.Ct.App.1994). "Under Indiana law, a person is presumed to understand and assent to the terms of the contracts he signs." *Buschman v. ADS Corp.,* 782 N.E.2d 423, 428 (Ind.Ct.App.2003) (citing *Lake Cnty. Trust Co. v. Wine,* 704 N.E.2d 1035, 1040 (Ind.Ct.App.1998)).

#### a. UCC

■■■ Guideone argues that the limiting language was inoperative because the UCC allows for the recovery of consequential damages. In a proper case, a buyer may recover incidental and consequential damages following a breach of warranty by a seller. Indiana Code § 26–1–2–714(3). Consequential damages resulting from the seller's breach include:

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty.

Indiana Code § 26–1–2–715(2). However, consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable.[2] Indiana Code § 26–1–

2–719(3). Comment one to this section provides that "[u]nder this section parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect."

Here, Schafstall signed the Addendum, which provides, in relevant part, as follows:

> Lowe's does warrant that the Installation services will be performed by the Installer in a good and "workmanlike manner." Lowe's warranty for Installation Services shall extend for a period of one year from the date the Certification of Completion is signed by Customer. . . . Customer agrees that its sole and exclusive remedy against Lowe's for a warranty claim is reinstallation in a good and workmanlike manner, including the repair and replacement of any Goods if and to the extent reasonably necessary to correct the defective Installation Services. **Customer shall have no warranty claim or remedy against Lowe's for** loss or damage caused by normal wear or tear, loss or damage which had not been reasonably mitigated, loss or damage caused by acts of God, incidental or consequential damages for lost profits, sales, injuries to persons or property, or **any other incidental or consequential damages.**

Appellee Lowe's App. p. 15 (emphasis added).

While we agree that in a proper case, consequential damages may be recoverable, we conclude that this is not a proper case. The UCC, as codified in the Indiana Code section 26–1–2–719(3) expressly provides that consequential damages may be limited, and that agreements limiting rem-

---

**2.** This section provides that in the case of consumer goods, limitation of consequential damages for injury to the person is prima facie unconscionable. However, in the in-

stant matter, Guideone did not assert that the alleged failure resulted in any injury to either Schafstall's or Alexander's person.

edies are to be given effect. Here, Schafstall agreed to the warranty terms limiting the potential to recover consequential damages. Thus, Guideone, as subrogee for Schafstall, was not entitled to recover consequential damages from Lowe's.

### b. Express Warranty

■ Guideone also argues that the limiting language conflicted with Lowe's express warranty. In support of its claim, Guideone relies on what appears to be a half-page promotional sheet ("the sheet") that was given to Schafstall and Alexander before Schafstall purchased the water system. The sheet indicates, in relevant part, that "All installation services are guaranteed by Lowe's warranty," and that "Lowe's warrants that the installation services will be performed by an independent subcontracted installer in a good and workmanlike manner." Appellant's App. p. 63. Guideone claims that the sheet was not a promotional document, but rather was a contractual document that created an express warranty and that the sheet contained all relevant contractual terms. Guideone, however, fails to acknowledge on appeal that the sheet expressly states "See Installed Sales Contract or Presentation Folders for details." Thus, the express language of the sheet indicates, at the very least, that additional terms apply.

The additional terms referenced on the sheet are contained in the Addendum. Shafstall was aware of the Addendum and, by signing it, is presumed to be aware of its terms. *See Buschman,* 782 N.E.2d at 428. Because the additional terms are contained in the Addendum to the contract that was expressly referenced by the sheet, we conclude that contrary to Guideone's claim, the terms do not conflict with the sheet but rather are the very "details" which the sheet expressly references.[3] The trial court did not err in granting partial summary judgment in favor of Lowe's.

### II. Lowe's Claims on Cross–Appeal

### A. Whether the Trial Court Erred in Granting Summary Judgment in Favor of Guideone

Lowe's contends on cross-appeal that the trial court erred in granting partial summary judgment in favor of Guideone. Specifically, Lowe's argues that the trial court erred in ruling that it is liable to Guideone as a matter of law. Again,

> the standard of review of a summary judgment ruling is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Shell Oil Co. v. Lovold*

---

**3.** To the extent that Guideone relies on *Carpetland U.S.A. v. Payne,* 536 N.E.2d 306 (Ind. Ct.App.1989), in support of its claim that the terms conflicted with Lowe's express warranty, we conclude that *Carpetland* is easily distinguished from the instant matter. In *Carpetland,* a sales associate made an oral statement regarding the applicable warranty that conflicted with the terms of the sales contract signed by the parties. 536 N.E.2d at 307. The sales associate did not inform the buyer of the conflicting terms contained in the sales contract, and the buyer was not aware of the contract terms. *Id.* Both the trial court and this court on appeal determined that the oral statement amounted to an express warranty. *Id.* at 307–08. Here, unlike in *Carpetland,* Shafstall was notified prior to purchase that additional terms beyond those included in the sheet applied. The sheet expressly directed prospective buyers to see the sales contract for warranty details. Additionally, at the time of purchase, Shafstall was made aware of the terms of the warranty, and even signed the Addendum to the sales contract in which the warranty terms were set forth. Thus, unlike the buyer in *Carpetland,* Shafstall was presumed to be aware of its terms. *See Buschman,* 782 N.E.2d at 428.

*Co.,* 705 N.E.2d 981, 983–84 (Ind.1998). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Colonial Penn Ins. v. Guzorek,* 690 N.E.2d 664, 667 (Ind.1997). The review of a summary judgment motion is limited to those materials designated to the trial court. T.R. 56(H); *Rosi v. Bus. Furniture Corp.,* 615 N.E.2d 431, 434 (Ind. 1993). We must carefully review decisions on summary judgment motions to ensure that the parties are not improperly denied their day in court. *Estate of Shebel v. Yaskawa Elec. Am., Inc.,* 713 N.E.2d 275, 277 (Ind.1999).

*Gunkel,* 822 N.E.2d at 152. The standard of review is not altered by cross-motions for summary judgment. *PSI Energy, Inc. v. Home Ins. Co.,* 801 N.E.2d 705, 713 (Ind.Ct.App.2004), *trans. denied.*

### 1. Admissibility of Indendino's Affidavit under Indiana Trial Rule 56(E)

■ In challenging the trial court's order granting partial summary judgment in favor of Guideone, Lowe's argues that the trial court erred in considering the affidavit of Louis Indendino which Guideone designated pursuant to Trial Rule 56 in support of its motion for summary judgment. Lowe's claims that the trial court erroneously considered the Indendino affidavit because it did not contain any statement regarding whether the testing conditions discussed within were substantially similar to the conditions present at Schafstall and Alexander's home at the time of the loss. In support, Lowe's relies on *Montgomery Ward & Co. v. Gregg,* 554 N.E.2d 1145, 1158 (Ind.Ct.App.1990), which states that evidence of testing is relevant and may be admitted only if the conditions under which the tests were conducted are substantially similar to those

existing at the time of the incident being investigated.

In the instant matter, the Indendino affidavit described in detail the methods used to install and test the water system. Lowe's designated no evidence before the trial court showing that the conditions and methods employed in the test were not substantially similar to the conditions present at Schafstall and Alexander's home at the time of the loss. Absent a showing that the conditions were not substantially similar, we conclude that the trial court did not err in considering the Indendino affidavit at the summary judgment stage of the proceedings.

### 2. Issue of Material Fact

■ Having concluded that the trial court properly considered the Indendino affidavit, we next consider whether an issue of material fact remained that would preclude summary judgment on the issue of liability. Guideone does not contest Lowe's assertion that it is only liable to Guideone if the water system was not installed in a good and workmanlike manner. Thus, Guideone was only entitled to summary judgment on the issue of Lowe's liability if no genuine issue of material fact exists regarding the installation of the water system.

Again, in support of its motion for partial summary judgment, Guideone designated the Indendino affidavit in which he opined that the water system did not malfunction, implying that the loss must have been caused by faulty installation. In opposition of Guideone's motion, Lowe's designated the deposition testimony of Gregg Adams, a U.S. Water employee who inspected the water system immediately following the loss. Adams stated that upon inspection, he determined that the water system was properly installed. Because Indendino and Adams presented conflicting opinions regarding the installation of

the water system, we conclude that an issue of material fact remains. Thus, the trial court erroneously granted partial summary judgment in favor of Guideone in this regard.[4]

In sum, we conclude that Alexander was bound by the warranty contract, that the trial court erred in granting U.S. Water's motion to dismiss, that the trial court properly granted partial summary judgment in favor of Lowe's limiting Lowe's potential financial liability to Guideone to the terms set forth in the Addendum to the Sales Contract, and that the trial court erroneously granted partial summary judgment in favor of Guideone on the question of whether it was entitled to recover from Lowe's.

The judgment of the trial court is affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this opinion.

BAKER, J., concurs in part and dissents in part with opinion.

MAY, J., concurs.

BAKER, Judge, concurring in part and dissenting in part.

I concur with the majority's determination that the trial court erred in granting U.S. Water's motion to dismiss, and in granting partial summary judgment in favor of Lowe's on the issue of Lowe's liability. However, I part ways with my colleagues' decision to affirm the trial court's grant of partial summary judgment in favor of Lowe's on the issue of scope of liability. Specifically, the majority determines that the trial court properly limited Lowe's potential financial liability to Guideone to the terms set forth in the Adden-

dum to the Sales Contract, which provided that the "exclusive remedy" is reinstallation including repair and replacement. Appellee Lowe's App. p. 15. Under the facts and circumstances of this case, I would reverse the trial court's partial grant of summary judgment on the issue of scope of liability, thereby removing the limit on Lowe's potential liability to Guideone.

By distributing a flyer guaranteeing all installation serviced by Lowe's warranty, Lowe's enticed Alexander and Schafstall into its store. Furthermore, U.S. Water acted as Lowe's subcontractor-water system installer, thereby Lowe's knew with whom it was dealing. Alexander and Schafstall did not. Put another way, Alexander and Schafstall did not hire U.S. Water to install the water system; Lowe's did. Lowe's should therefore be as potentially liable to Guideone as its subcontractor.

The majority concludes that the other property exception to the economic loss doctrine would permit tort recovery from U.S. Water for the flood damage to Schafstall and Alexander's home because the damaged floors, walls, etc. were not merely a component of the water system. Rather, they were separate and distinct items that were acquired separately. *See, e.g., Indpls.-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.,* 929 N.E.2d 722 (Ind.2010). I would apply this exception to Lowe's as well.

Principles of equity also dictate this result. The elements of the equitable doctrine of promissory estoppel are as follows: 1) a promise by the promissor 2) made with the expectation that the promise will

---

4. Having concluded that an issue of material fact remained and that the trial court erroneously granted partial summary judgment in favor of Guideone with regard to Lowe's lia-

bility, we need not consider whether the trial court erred in striking Timmons's affidavit which was designated by Lowe's in opposition to Guideone's motion for summary judgment.

rely thereon, 3) which induces reasonable reliance by the promise 4) of a definite and substantial nature, and 5) injustice can be avoided only by enforcement of the promise. *The First National Bank of Logansport v. Logan Mfg. Co., Inc.*, 577 N.E.2d 949, 954 (Ind.1991). This doctrine is designed to aid the law in the administration of justice where, without its aid, injustice might result. *Id.*

Here, Lowe's promised its customers, including Anderson and Schafstall, that it would guarantee the installation services provided by its U.S. Water, the subcontractor. Anderson and Schafstall relied on this promise when they chose to purchase their water system from Lowe's rather than from one of Lowe's competitors. Injustice in this case can be avoided only by enforcement of Lowe's promise because Lowe's customers should be able to rely on Lowe's promises.

I would therefore reverse the trial court's grant of summary judgment in favor of Lowe's on the issue of scope of liability.