**Lawrence GUNKEL and Judy Lynn Gunkel, Appellants–Plaintiffs,**

v.

**RENOVATIONS, INC., and J & N Stone, Inc., Appellees–Defendants.**

No. 76A01–0306–CV–206.

Court of Appeals of Indiana.

Oct. 24, 2003.

David W. Stone IV, Stone Law Office, Anderson, IN, Christopher Wheeler, Stout & Wheeler, LLP, Angola, IN, Attorneys for Appellants.

Glenn L. Duncan, Jacob S. Frost, Thorne Grodnik, LLP, Elkhart, IN, Attorneys for Appellees.

**OPINION**

BAKER, Judge.

The law occasionally—almost uncannily—throws together parties and counsel within what seems a close degree of kinship. Here, appellants-plaintiffs Lawrence and Judy Lynn Gunkel—through their attorney David W. *Stone*, IV, appeal the entry of summary judgment in favor of appellees-defendants J & N *Stone*, Inc., in a case involving *stone* masonry.[1] Specifically, the Gunkels contend that the trial court erred in granting J & N Stone's motion for summary judgment because the economic loss doctrine should not have barred the Gunkels' negligence claim as a matter of law. Concluding that the trial court correctly applied the economic loss rule to bar the Gunkels' claims for damage to the Gunkels' home itself, we affirm.

*FACTS*

The facts most favorable to the Gunkels, the non-moving party, reveal that on March 9, 1999, the Gunkels contracted with Renovations, Inc., for the construction of a home in Fremont, Indiana. J & N Stone was hired by the Gunkels to do façade work on the home. Shortly after the project was completed, moisture began to develop, and water entered through gaps in the façade. As a result, the Gunk-

---

1. We heard oral argument in Indianapolis on September 23, 2003. We thank counsel for their capable presentation in a situation where these "Rolling Stones" could have made a complicated matter even more complicated.

els filed suit against Renovations, Inc., for breach of contract on October 24, 2000, seeking compensation for loss of use and repair costs.

The Gunkels amended their complaint on December 14, 2000, adding J & N Stone as a defendant under a heading titled "COUNT II." The language of COUNT II stated that the Gunkels "re-assert each and every allegation as set forth in their Complaint for Damages of October 24, 2000, against Defendants–Renovations, Inc." Appellant's App. p. 140. COUNT II also alleged that J & N Stone "negligently, carelessly and in a shoddy and unworkmanlike manner" installed the masonry of the Gunkels' home. Appellant's App. p. 323. On May 10, 2002, J & N Stone filed a motion for partial summary judgment. J & N Stone argued that inasmuch as the Gunkels' contract claim made no mention of the existence of a contractual relationship between J & N Stone and the Gunkels, a claim for contractual damages could not stand. The trial court agreed and entered partial summary judgment for J & N Stone on July 5, 2002. The Gunkels did not appeal this ruling.

Rather, on September 17, 2002, the Gunkels filed a second motion to amend their complaint, where they sought to allege a claim of negligence against Renovations, Inc. The trial court held a hearing on October 7, 2002, on the Gunkels' motion. During the hearing, counsel for J & N Stone voiced concern that the Gunkels would attempt to resurrect the contract claims that had already been disposed of on partial summary judgment. The trial court, however, reasserted its July 5, 2002 holding that all contract-based claims against J & N Stone had been terminated and that only a negligence claim remained:

> [J & N Stone]: Your Honor, I just want, is the claim against my client still as the Court summarized in the beginning and Mr. Stout ...

> [Trial Court]: Negligence. Let me make that very clear.
> [J & N Stone]: Negligence only?
> [Trial Court]: Yes.

Appellees' App. p. 95. At the close of the hearing, the trial court granted the Gunkels' motion to amend their complaint.

On November 6, 2002, J & N Stone filed its motion for summary judgment, arguing that purely economic damages may not be recovered under a negligence theory. Following a hearing on J & N Stone's motion, the trial court entered summary judgment for J & N Stone on January 14, 2003. The Gunkels now appeal.

## DISCUSSION AND DECISION

In resolving this issue, we first note that when reviewing the entry of summary judgment, we use the same standard used by the trial court: summary judgment is appropriate if the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Corr v. Amer. Fam. Ins.*, 767 N.E.2d 535, 537 (Ind.2002). Moreover, we construe all facts and reasonable inferences in favor of the non-moving party. *Id.* at 537–38. If "material facts conflict or undisputed facts lead to conflicting inferences, summary judgment is inappropriate, even if the court believes the non-moving party will not succeed at trial." *Greathouse v. Armstrong*, 616 N.E.2d 364, 366 (Ind.1993).

At issue here is the application of the economic loss rule. This rule applies to bar recovery "where a negligence claim is based upon a product's failure to perform as expected and the plaintiff suffers only economic damages." *Martin Rispens & Son v. Hall Farms*, 621 N.E.2d 1078, 1089 (Ind.1993). The concept behind the rule is that "[n]egligence theory protects interests related to safety of freedom from physical harm." *Bamberger & Feibleman*

*v. Indianapolis Power & Light Co.*, 665 N.E.2d 933, 938 (Ind.Ct.App.1996). If no physical harm occurs such that a loss is only pecuniary, courts deny recovery. *Id.*

The pragmatic reason behind the economic loss rule is straightforward: "The physical consequences of negligence usually have been limited, but the indirect economic repercussions of negligence may be far wider, indeed virtually open-ended." Fowler Harper, *The Law of Torts* § 25.18A (1986). Thus, the fear of "crushing useful activity by liability" is the moving force behind the rule. *Id.* As Judge Benjamin Cardozo put it, the economic loss doctrine prevents "liability in an indeterminate amount for an indeterminate time to an indeterminate class." *Ultramares Corp. v. Touche, Niven & Co.*, 255 N.Y. 170, 174 N.E. 441, 444 (1931).

Our supreme court employed the economic loss rule in *Rispens* to deny recovery for lost profits. In *Rispens*, the plaintiff, a watermelon farmer, sued his seed supplier because the seeds were diseased. The *Rispens* court held that "Hall Farms' claim is based on damage to the product itself. Strict liability in tort is inapplicable to claims of such damage because the proper remedy is warranty." *Rispens*, 621 N.E.2d at 1089.

The U.S. Supreme Court stated its view of the economic loss rule in *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). In *East River*, the plaintiff—a ship charterer—sought recovery against the designer of the ship's turbines because the turbines had malfunctioned. Only the turbines were damaged, but the charterer lost income because the ship was out of service. As "no person or other property [was] damaged," the *East River* court applied the economic loss doctrine to deny recovery, noting that "[e]ven when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law." *Id.* at 870, 106 S.Ct. 2295.

In *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 117 S.Ct. 1783, 138 L.Ed.2d 76 (1997), however, the U.S. Supreme Court illuminated the phrase "other property." In *Saratoga*, a ship purchaser added a skiff, fishing net, and spare parts to the boat. The purchaser then sold the boat to Saratoga Fishing. A fire caused by a defective hydraulic system caused the ship to sink. The *Saratoga* court held that Saratoga Fishing could recover in tort for the loss of the skiff, fishing net, and spare parts but not for the ship itself. *Id.* at 885, 117 S.Ct. 1783. Specifically, the *Saratoga* court noted that these additions were the "other property" referred to in *East River*. The court reasoned that when a manufacturer places a product in the stream of commerce, this is the "product itself" referred to in *East River*, as the manufacturer had complete control of the product at that time. *Id.* at 883, 117 S.Ct. 1783.

J & N Stone cites *Choung v. Iemma*, 708 N.E.2d 7, 10 (Ind.Ct.App.1999), for the proposition that the Gunkels may not recover. In *Choung*, the plaintiff purchased a home from the defendants, only to suffer from flooding due to cracks in the garage floor, incorrect drainage, and a faulty septic system. One of Choung's claims was that the defendants had performed negligently in constructing the house. The trial court entered summary judgment for the defendants. We affirmed, noting that "these claims are economic in nature because they did not arise from physical harm to Choung or his personal property; instead, they arise from a loss of value and cost of repair to his house. Choung's claims are not recoverable under negli-

gence; his theory of recovery lies in contract." *Id.* at 14. J & N Stone argues that, as in *Choung*, the Gunkels' "claims are not recoverable under negligence; [their] theory of recovery lies in contract." *Id.* at 14.

The reason for the Gunkels' abandonment of their contract remedy is not apparent. Undoubtedly, it appears that a claim for breach of contract could go forward. With respect to the Gunkels' negligence claim, we are persuaded that the U.S. Supreme Court's rationale in *East River* and *Saratoga* should apply in cases where the negligent installation of a portion of a home causes subsequent damage to "other property." Notwithstanding this holding, however, the Gunkels' "other property" was not damaged. The Gunkels had claimed that "walls, ceilings and floors," together with "drywall, OSV board and some of the carpet and carpet padding" were damaged. Appellant's App. p. 315. Walls, ceilings, floors, drywall, OSV board, and carpeting are not "other property," but rather fixtures. *Black's Law Dictionary* 638 (6th ed. 1990) (A fixture is that which is fixed or attached to something permanently as an appendage, and not removable). These items were affixed to the Gunkels' home, just as the turbines in *East River* were "affixed" to the ship. Thus, it is apparent that only the "product itself," the Gunkels' home, was damaged. In sum, the economic loss rule bars the Gunkels from proceeding to trial on a negligence theory, and, thus, the trial court did not err in entering summary judgment for J & N Stone.

Affirmed.

BROOK, C.J., and SHARPNACK, J., concur.