Lawrence GUNKEL and Judy
Lynn Gunkel, Appellants
(Plaintiffs below),

v.

RENOVATIONS, INC. and J
& N Stone, Inc., Appellees
(Defendants below).

No. 76S01–0403–CV–133.

Supreme Court of Indiana.

Feb. 1, 2005.

Rehearing Denied May 25, 2005.

David W. Stone IV, Anderson, IN, Christopher Wheeler, Angola, IN, Attorneys for Appellants.

Glenn L. Duncan, Jacob S. Frost, Elkhart, IN, Attorneys for Appellees.

BOEHM, Justice.

We hold that damages recoverable in tort for a defective product or service are governed by the "economic loss" doctrine whether or not the product or service is supplied in a transaction subject to either the Products Liability Act or the Uniform Commercial Code, or both. Under the doctrine, physical injuries and damages to other property are recoverable in tort, but damages to the defective product itself are not. Whether damaged property is "other property" turns on whether it was ac-quired by the plaintiff as a component of the defective product or was acquired separately.

### Factual and Procedural Background

In March 1999, the Gunkels contracted with Renovations, Inc., for the construction of a $435,000 three-story residence in Fremont, Indiana. Six months later, J & N Stone, Inc. was hired by the Gunkels to install a stone and masonry exterior on the home. Shortly after the stone façade was installed, water began to enter through gaps in the façade and substantial moisture problems arose. The Gunkels claim that walls, ceilings, floors, drywall, carpet, and carpet padding were damaged. The Gunkels claim that the defective façade required removing and replacing the masonry, repainting of the interior of the home, clearing and recoating the roof, replacing exterior doors and windows, reframing some of the exterior door and window openings, removing mold, and replacing exterior electrical outlets.

In October 2000, the Gunkels filed suit against Renovations for breach of contract and fraud seeking compensation for the lost use of their home and repair costs. The Gunkels then amended their complaint adding J & N as a defendant and asserted negligence and breach of contract claims against J & N. J & N moved for partial summary judgment as to the contract claim, arguing that it was not a party to the contract between the Gunkels and Renovations and that there was no separate contract between the Gunkles and J & N. The trial court granted J & N's motion as to the contract claim. According to J & N, the Gunkels sought to position J & N as a subcontractor of Renovations in order to bolster their claim against Renovations. Whether for that reason or not, the Gunkels elected to forego any contract claim against J & N and relied solely on J & N's

alleged negligence. J & N next moved for summary judgment as to the negligence claim on the ground that the Gunkels sought purely economic damages, which are not available under a negligence theory. The trial court granted summary judgment for J & N and certified the order for immediate appeal pursuant to Trial Rule 54(B). The Court of Appeals held that the Gunkels were seeking only economic losses and therefore had no tort claim. *Gunkel v. Renovations, Inc.,* 797 N.E.2d 841, 845 (Ind.Ct.App.2003). We granted transfer. *Gunkel v. Renovations, Inc.,* 812 N.E.2d 799 (Ind.2004).

### Standard of Review

■ On appeal, the standard of review of a summary judgment ruling is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Shell Oil Co. v. Lovold Co.,* 705 N.E.2d 981, 983–84 (Ind. 1998). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Colonial Penn Ins. v. Guzorek,* 690 N.E.2d 664, 667 (Ind.1997). The review of a summary judgment motion is limited to those materials designated to the trial court. T.R. 56(H); *Rosi v. Bus. Furniture Corp.,* 615 N.E.2d 431, 434 (Ind.1993). We must carefully review decisions on summary judgment motions to ensure that the parties are not improperly denied their day in court. *Estate of Shebel v. Yaskawa Elec. Am., Inc.,* 713 N.E.2d 275, 277 (Ind.1999).

### "Other Property" for Purposes of the "Economic Loss" Doctrine

■ Under the "economic loss" doctrine, contract is the sole remedy for the failure of a product or service to perform as expected. We agree with the Seventh Circuit that "economic loss" is not a helpful term in understanding the doctrine. *See Miller. v. United States Steel Corp.,* 902 F.2d 573, 574 (7th Cir.1990) (Damage to a product is called "economic loss." A "better term" for injuries other than to the plaintiff's person or "other property" is "commercial loss, . . . because tort law is a superfluous and inapt tool for resolving purely commercial disputes"). Despite its imprecision, the term "economic loss" has been adopted by courts in this and most other jurisdictions and we use it here with the caveat that it does not necessarily lead to a proper understanding of the scope and applicability of the doctrine.

This doctrine was first applied in Indiana before the Products Liability Act was amended to govern negligence claims as well as strict liability. *Reed v. Central Soya Co., Inc.,* 621 N.E.2d 1069 (Ind.1993), *modified on other grounds,* 644 N.E.2d 84 (Ind.1994), was a Products Liability Act case. The Products Liability Act at that time excluded recovery for "economic damage." *See* Ind.Code § 33–1–1.5–2 (1988). *Reed* explained that under this doctrine, contract is the only available remedy "where the loss is solely economic in nature, as where the only claim of loss relates to the product's failure to live up to expectations, and in the absence of damage to other property or person." *Id.* at 1074–75. This was reiterated in *Martin Rispens & Son v. Hall Farms, Inc.,* 621 N.E.2d 1078 (Ind.1993), which involved claims under the Products Liability Act and also claims for breach of contract and negligence. In addressing the negligence claim we held that: "Economic losses are not recoverable in a negligence action premised on the failure of a product to perform as expected unless such failure causes personal injury or physical harm to property other than the product itself." *Id.* at 1091. *Accord* W. Page Keeton et al., *Prosser and Keeton on Torts* § 101, at 708

(5th ed.1984). The same doctrine has since been applied to claims governed by the current version of the Indiana Products Liability Act. In *Progressive Insurance Co. v. General Motors Corp.*, 749 N.E.2d 484, 491 (Ind.2001), we held that the Products Liability Act does not support an action based on a defect in a product where the only damage is to the product itself. In *Fleetwood Enterprises, Inc. v. Progressive Northern Insurance Co.*, 749 N.E.2d 492 (Ind.2001), a defect in a motor home caused the motor home to be engulfed in flames. We held that although damage to the motor home itself was ninety-six percent of the claim, "personal injury and damage to other property from [the] defective [motor home] [were] actionable under the [Products Liability] Act, but their presence [did] not create a claim under the Act for damage to the product itself." *Id.* at 493.

■ In sum, Indiana law under the Products Liability Act and under general negligence law is that damage from a defective product or service may be recoverable under a tort theory if the defect causes personal injury or damage to other property, but contract law governs damage to the product or service itself and purely economic loss arising from the failure of the product or service to perform as expected. In this respect, Indiana law is consistent with admiralty law,[1] and the law of most other states.[2] "Economic losses" occur when there is no personal injury and

1. *See, e.g., Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 117 S.Ct. 1783, 138 L.Ed.2d 76 (1997) (allowing recovery in tort for "other property" which included extra equipment added to the ship). Thus, the United States Supreme Court held the economic loss rule did not bar recovery under admiralty tort law for damages to "other property" where a defective hydraulic system caused an engine room fire and flood that led to the sinking of a fishing vessel. The plaintiff sought recovery for damages to the ship (the product) and extra equipment (other property), which included a skiff, a fishing net, and spare parts. The Court affirmed its holding in *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 859, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), that "an admiralty tort plaintiff cannot recover for the physical damage the defective product causes to the 'product itself.'" *Saratoga*, 520 U.S. at 877, 117 S.Ct. 1783. Since the hydraulic system was a component of the damaged ship recovery was withheld. *Id.* However, the plaintiff was permitted to recover for physical damage to the other equipment even though it had been affixed to the vessel. *Id.*

2. *See, e.g., Carstens v. City of Phoenix*, 206 Ariz. 123, 75 P.3d 1081, 1083 (Ct.App.2003) ("the economic loss rule bars a party from recovering economic damages in tort unless accompanied by physical harm, either in the form of personal injury or secondary property damage"); *Jimenez v. Superior Court*, 29 Cal.4th 473, 127 Cal.Rptr.2d 614, 58 P.3d 450, 457 (2002) (allowing recovery for defects to parts of the home other than the window which was alleged to be negligently installed); *Northwest Ark. Masonry, Inc. v. Summit Specialty Prod., Inc.*, 29 Kan.App.2d 735, 31 P.3d 982, 987 (2001) ("recovery for physical damage [to] a product caused to 'other property' is not precluded by the economic loss doctrine"); *A.J. Decoster Co. v. Westinghouse Elec. Corp.*, 333 Md. 245, 634 A.2d 1330, 1334 (1994) (allowing recovery in tort for chickens lost after a ventilation system failure). *But see Am. Xyrofin, Inc. v. Allis–Chalmers Corp.*, 230 Ill.App.3d 662, 172 Ill.Dec. 289, 595 N.E.2d 650, 656 (1992) (although blade failure in centrifugal compressor unit caused damage to product itself and surrounding premises, "absent additional factual circumstances sufficient to implicate legitimate safety/insurance concerns, the sole existence of damage to other property, in and of itself, is insufficient to allow recovery in tort"); *Citizens Ins. Co. v. Osmose Wood Preserving, Inc.*, 231 Mich.App. 40, 585 N.W.2d 314, 316 (1998) (holding that economic loss doctrine applied to damages for roof collapse even though court determined that it was "other property"); *Selzer v. Brunsell Bros., Ltd.*, 257 Wis.2d 809, 652 N.W.2d 806, 817 (2002) (disallowing the "other property" exception if, at bottom, the claim involves disappointed performance expectations).

no physical harm to other property. *See* W. Prosser, *Handbook on the Law of Torts* § 101, at 665 (4th ed.1971). Rather these losses are viewed as disappointed contractual or commercial expectations. *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 926 (7th Cir.2003). Thus, economic loss has been defined by Indiana courts as "the diminution in the value of a product and consequent loss of profits because the product is inferior in quality and does not work for the general purposes for which it was manufactured and sold. Economic loss includes such incidental and consequential losses as lost profits, rental expense and lost time." *Reed*, 621 N.E.2d at 1074 (citations omitted). Damage to the product itself, including costs of its repair or reconstruction, is an "economic loss" even though it may have a component of physical destruction. *Progressive Ins.*, 749 N.E.2d at 488.

Because the "economic loss" doctrine permits tort recovery only for personal injury or damage to "other property," if property is damaged it is necessary to identify the product at issue which defines "other" property. The subject of "other property" has been approached in a number of different ways.[3] Much of the law addressing the issue of what constitutes "other property" deals with whether the other property is a distinct item or merely a component of the overall defective product.[4] Other courts have focused on whether "goods" are involved.[5] Yet others have concluded that the economic loss doctrine precludes recovery for injury to "other property" if the injury was, or should have been, reasonably contemplated by the parties to the contract.[6] Some have concluded that the "product" is the product purchased by the plaintiff, not the product sold by the defendant.[7]

**3.** *See Myrtle Beach Pipeline Corp. v. Emerson Elec. Co.*, 843 F.Supp. 1027, 1057–62 (D.S.C. 1993) for an extensive discussion of the subject.

**4.** *See, e.g., Shipco 2295, Inc. v. Avondale Shipyards, Inc.*, 825 F.2d 925, 929–30 (5th Cir. 1987) (the steering gear engine was not a component distinct from the shipping vessel); *Am. Home Assurance Co. v. Major Tool & Mach., Inc.*, 767 F.2d 446, 447–48 (8th Cir. 1985) (damage from defective turbine parts to remainder of turbine was not damage to other property); *Washington Courte Condominium Ass'n–Four v. Washington–Golf Corp.*, 150 Ill. App.3d 681, 103 Ill.Dec. 752, 501 N.E.2d 1290, 1293–94 (1986) (water damage to insulation, walls, and electrical outlets caused by defective windows and exterior sliding glass doors was not damage to other property but merely consequential economic loss not recoverable in tort).

**5.** *See, e.g., Theuerkauf v. United Vaccines Div. of Harlan Sprague Dawley*, 821 F.Supp. 1238, 1241 (W.D.Mich.1993) (no damages in tort for the death of minks from vaccination by defendant's product because the damage arose out of a commercial sale of goods).

**6.** *See, e.g., Neibarger v. Universal Coops., Inc.*, 439 Mich. 512, 486 N.W.2d 612, 620 (1992) (in a commercial transaction between two sophisticated parties where the gravamen of the complaint is that the purchased product is of a lesser quality than warranted, the purchaser cannot bring a tort action for foreseeable injury to other property).

**7.** *See, e.g., Easling v. Glen–Gery Corp.*, 804 F.Supp. 585, 590 (D.N.J.1992) (building damage caused by defective bricks not barred as economic loss because plaintiffs purchased completed apartment complex, not a load of bricks); *Casa Clara Condominium Ass'n, Inc. v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244, 1247 (Fla.1993) (rejecting homeowners' argument that damages caused to a condominium by defective concrete was damage to other property because plaintiffs purchased finished homes, not component parts); *Oceanside at Pine Point Condominium Owners Ass'n v. Peachtree Doors, Inc.*, 659 A.2d 267, 271 (Me.1995) (no recovery for damages caused by defects in windows because the plaintiffs purchased finished condominium units, not individual components of the units).

 The theory underlying the economic loss doctrine is that the failure of a product or service to live up to expectations is best relegated to contract law and to warranty either express or implied. The buyer and seller are able to allocate these risks and price the product or service accordingly. As explained in *Reed,*

> The justifications for adhering to this rule are several. The law of sales set out in Article 2 of the Uniform Commercial Code governs the economic relations between buyer and seller; the dissatisfied buyer may avail himself of those statutory remedies fashioned by the legislature. Allowing a buyer to recover in tort where he has suffered only economic loss allows him to circumvent the seller's effective limitation or exclusion of warranties under the U.C.C., and subjects manufacturers to liability for damages of unknown and unlimited scope.... Contract law remains the appropriate vehicle to redress a purchaser's disappointed expectations when a defect renders a product inferior or unable adequately to perform its intended function.

621 N.E.2d at 1075. *Reed* dealt with a sale of "goods" subject to the Uniform Commercial Code and therefore expressed the rationale in those terms, but the concepts expressed in *Reed* apply equally in other contexts. The central theory underlying "economic loss" is that the law should permit the parties to a transaction to allocate the risk that an item sold or a service performed does not live up to expectations. The source of the economic loss doctrine did not limit it to sale of goods. The seminal case on this issue is Justice Traynor's opinion in *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), which speaks in terms of warranty and does not mention the U.C.C. Similarly, the doctrine was explained shortly after it arose as: "[T]he manifest intent of the parties should ordinarily control the nature and extent of the obligations of the parties to a contract of sale, either of real or personal property or a contract of service." Keeton, *supra,* § 92, at 657. Indeed, in *Progressive Insurance* we observed that viewing losses as purely "economic loss" and not personal or property damage loss is consistent with Indiana law in the context of claims for negligent construction such as we have here. 749 N.E.2d at 488 (citing *Choung v. Iemma,* 708 N.E.2d 7, 13–14 (Ind.Ct.App. 1999) (negligent construction)). Construction claims are not necessarily based on defective goods or products, but nonetheless are subject to the economic loss doctrine. In general, a claim that a product or service did not perform as expected is best left to contract law remedies.

We think that the theory supporting the economic loss doctrine supplies the answer to whether damage to "other property" is involved. Only the supplier furnishing the defective property or service is in a position to bargain with the purchaser for allocation of the risk that the product or service will not perform as expected. If a component is sold to the first user as a part of the finished product, the consequences of its failure are fully within the rationale of the economic loss doctrine. It therefore is not "other property." But property acquired separately from the defective good or service is "other property," whether or not it is, or is intended to be, incorporated into the same physical object. Although we express our reasoning slightly differently, we align ourselves with the courts that have concluded that the "product" is the product purchased by the plaintiff, not the product furnished by the defendant. The cases that have used this formulation have typically involved claims

by a first user[8] of a finished product that includes a component supplied by the defendant where the purchaser had no dealings with the defendant. A frequently cited example is *King v. Hilton–Davis*, 855 F.2d 1047 (3d Cir.1988), where a farmer sued the manufacturer of a chemical used to treat the seed potatoes that the farmer purchased from a supplier. The Third Circuit applied Pennsylvania law but followed the United States Supreme Court's reasoning in *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), finding that there was no reason to give purchasers a broader tort remedy against the remote supplier than the purchaser could assert against the manufacturer of the assembled defective product. *Id.* at 1051. Similarly, a purchaser of a complete aircraft is remitted to warranty remedies and has no tort remedy against a component supplier even if the entire aircraft is damaged by a defective component. *Airlift Int'l, Inc. v. McDonnell Douglas Corp.*, 685 F.2d 267 (9th Cir.1982) (California law).

■ Here we have the obverse situation. The Gunkels did deal directly with J & N. The same formulation of the demarcation between contract and tort remedies is controlling—property acquired by the plaintiff separately from the defective goods or services is "other property" whose damage is recoverable in tort. That formulation excludes from "other property" other parts of a finished product damaged by components supplied to the seller by other manufactures and imported into the seller's product. But it does make property acquired separately "other property" for purposes of the economic loss rule even if the defective product is to be incorporated into a completed product for use or resale.

■ The Court of Appeals held that here the "product" is the entire house on which the stone façade was installed. Under this view, the damage caused to other parts of the house by the alleged defect in the façade is damage to the product itself and is barred by the economic loss rule. As will be seen from the foregoing, we disagree. The economic loss rule does not bar recovery in tort for damage that a separately acquired defective product or service causes to other portions of a larger product into which the former has been incorporated. *See, e.g., Jimenez v. Superior Court*, 29 Cal.4th 473, 127 Cal.Rptr.2d 614, 58 P.3d 450, 457 (2002) (holding that the manufacturer of a defective window installed in a mass-produced home may be held liable in tort for damage that the window's defect causes to other parts of the home in which it is installed). The product or service purchased from J & N was the façade added to the exterior of the Gunkels' home by J & N. J & N installed the façade under an arrangement with the Gunkels that was independent of the contract with Renovations to build the home. Therefore, the economic loss rule precludes tort recovery for damage to the façade itself, but tort recovery for damage to the home, and its parts, caused by the allegedly negligent installation of the fa-

---

**8.** Under admiralty law, the United States Supreme Court concluded that separately acquired property added by a first user to a ship retained its character as "other property" for purpose of the economic loss doctrine even though the plaintiff acquired the ship after the added property had been attached. *Saratoga*, 520 U.S. at 876, 117 S.Ct. 1783. This is not consistent with the formulation that the test is "the product purchased by the plaintiff," but is consistent with our conclusion that at least in the hands of a first user, separately acquired goods or services are other property. We are not presented with the issue raised by a sale subsequent to the addition of other property and express no opinion as to it.

çade is not limited by the economic loss rule.

## Conclusion

Summary judgment as to the negligence claim is reversed. This case is remanded for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, and RUCKER JJ., concur.

SULLIVAN, J., dissents, believing the analysis and conclusion of the Court of Appeals in this case, 797 N.E.2d 841 (Ind. Ct.App.2003), is correct.