

FILED

Jul 24 2019, 5:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Cameron A. Morgan
Michelle A. Cobourn-Baurley
McNeely Stephenson
Shelbyville, Indiana

ATTORNEYS FOR APPELLEE
BANE-WELKER EQUIPMENT,
LLC

Daniel W. Glavin
Kathleen M. Erickson
O'Neill McFadden & Willett LLP
Schererville, Indiana

ATTORNEYS FOR APPELLEE CNH
INDUSTRIAL AMERICA, LLC

Nicholas C. Pappas
Maggie L. Smith
Jessica Williams Schnelker
Frost Brown Todd LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Indiana Farm Bureau as
Subrogee of Chester Lemler,
Garry Lemler, and Zak Lemler,

*Appellant-Plaintiff,*

v.

CNH Industrial America, LLC
and Bane-Welker Equipment,
LLC,

*Appellees-Defendants.*

July 24, 2019

Court of Appeals Case No.
18A-PL-2368

Appeal from the
Marshall Circuit Court

The Honorable
Curtis D. Palmer, Judge

Trial Court Cause No.
50C01-1710-PL-48

**Kirsch, Judge.**

Indiana Farm Bureau Insurance ("Farm Bureau") appeals the trial court's grant of summary judgment in favor of CNH Industrial America, LLC ("CNH Industrial") and Bane-Welker Equipment, LLC ("Bane-Welker") in Farm Bureau's action seeking subrogation from CNH Industrial and Bane-Welker for payment Farm Bureau paid to its insureds for damages to farm equipment. On appeal, Farm Bureau contends that the trial court erred in granting summary judgment in favor of Bane-Welker and CNH Industrial, specifically raising the following issues:

> I.    Whether Bane-Welker effectively disclaimed the implied warranty of merchantability by the language used in the documents signed at the time of purchase;
>
> II.   Whether the Corn Head is considered "other property" under Indiana law such that tort recovery for damages to the Corn Head is barred by the economic loss doctrine; and
>
> III.  Whether Farm Bureau's claim for negligent service of the Combine is barred by the economic loss doctrine.

We affirm.

## Facts and Procedural History[1]

[3] Tri L Farms ("the Farm") was formed in 1985 and operates as a commercial farm, growing, harvesting, and selling corn and soybeans. *Appellant's App. Vol. 3* at 73-75, 100. The Farm is owned and operated by Garry Lemler ("Garry") and Zak Lemler ("Zak") in equal partnership with their father, Chester Lemler. *Id.* at 73-74, 99-100. In its operation as a commercial farm, the Farm uses a combine to harvest its corn and soybean crops. *Id.* at 81. A combine is "a harvesting machine that heads, threshes, and cleans grain while moving over a field." https://www.merriam-webster.com/dictionary/combine (last visited May 30, 2019). When harvesting crops, a combine must have a "head" attached to the front of the combine, which feeds the crop into the combine so that the combine can process and harvest the crop. *Appellant's App. Vol. 3* at 81-82. When the Farm harvests its corn crops, it uses a "corn head" attached to the combine, and without the corn head attached, a combine cannot harvest corn. *Id.* at 81-82, 91-92.

[4] The Farm likes to replace its combines and corn heads every two or three years, and, in preparation for the 2015 harvest season, the Farm decided to trade in its existing combine and corn head and purchase updated models. *Id.* at 101-02. At that time, Garry was a salesman for Bane-Walker, in addition to owning and operating the Farm. *Id.* at 77. Prior to the beginning of the 2015 harvest

---

[1] Oral argument was heard on this case on May 16, 2019 in the Indiana Court of Appeals courtroom in Indianapolis, Indiana. We commend counsel on the quality of their written and oral advocacy.

season, Garry arranged for the Farm to purchase from Bane-Welker a used Case IH 8230 combine ("the Combine") in January 2015 and a used Case IH 4412F-30 corn head ("the Corn Head") in August 2015. *Id*. at 84; *Appellant's App. Vol. 4* at 70. Both the Combine and the Corn Head had been manufactured by CNH Industrial. *Appellant's App. Vol. 2* at 20. CNH Industrial had no involvement in the 2015 retail transactions between Bane-Welker and the Farm.

[5] As part of the purchase of both the Combine and the Corn Head, the Farm executed, in January 2015, a Retail Purchase Order and Security Agreement ("the Purchase Order") and a Retail Installment Sale Contract and Security Agreement ("the Sale Contract") for the Combine and, in August 2015, a Retail Purchase Order and Security Agreement ("the Purchase Order") and a Retail Installment Sale Contract and Security Agreement ("the Sale Contract") for the Corn Head. *Appellant's App. Vol. 3* at 56-58, 118-20; *Appellant's App. Vol. 4* at 70-71, 73-75. Garry completed these forms on behalf of Bane-Welker, as the salesperson on the transactions, and Zak signed the documents on behalf of the Farm. *Appellant's App. Vol. 3* at 86-87, 105-06.

[6] The Purchase Order for the Combine contained the following provisions, informing the Farm that it must: "1. Read this contract before you sign it;" and "4. The additional terms and conditions set forth *on the reverse side* are a part of this contract and are incorporated herein by reference." *Id*. at 56 (emphasis added). On the reverse side of the Purchase Order in the center of the page, under the headings, "**WARRANTY**" and "**USED EQUIPMENT**," which

were in all caps and bold typeface, the following language appeared: "USED EQUIPMENT covered by this Purchase Order is sold AS-IS, WHERE IS, WITH NO REPRESENTATIONS OR WARRANTIES, other than those stated on the reverse side for equipment 5 years old or newer." *Id.* at 58. The Purchase Order for the Corn Head contained identical language. *Appellant's App. Vol. 4* at 70-71. Garry and Zak testified they received these terms and conditions on behalf of the Farm when they received the Purchase Order and that they understood the terms and conditions associated with the "USED EQUIPMENT" warranty provisions applied to their purchase. *Appellant's App. Vol. 3* at 87-88, 107-08. Both Garry and Zak also stated that they were aware and understood that the Combine, because it was used, did not come with any warranties. *Id.* at 80-81, 104-05.

[7]     In addition to the Purchase Orders, the Farm also executed the Sale Contracts as part of its purchase of the Combine and the Corn Head. *Id.* at 118-20; *Appellant's App. Vol. 4* at 73-75. Each of the Sale Contracts spelled out the financial terms and secured the financial consideration of the transaction. *Appellant's App. Vol. 3* at 66. The first page of the Sale Contract for the Combine provided, just above the signature lines, "DO NOT SIGN THIS BEFORE YOU READ THE TERMS ON THE THREE AGREEMENT PAGES (PLUS ANY ADDENDUMS), EVEN IF OTHERWISE ADVISED." *Id.* at 118. At the top of the second page of the Sale Contract, it specifically stated in all capital letters "NO WARRANTY." *Id.* at 119. It further stated, "THE EQUIPMENT IS SOLD AS IS AND WITH ALL FAULTS . . . . NEITHER

SELLER NOR MANUFACTURER MAKE ANY OTHER REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AND SPECIFICALLY DISCLAIM THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE." *Id.* The Sale Contract for the Corn Head contained identical language. *Appellant's App. Vol. 4* at 73-74. Garry and Zak acknowledged receiving all three pages of the Sale Contract. *Appellant's App. Vol. 3* at 89, 110-11.

[8]     On October 29, 2016, the Combine and the attached Corn Head were being used to harvest the Farm's corn crops when the Combine caught fire, which resulted in complete destruction of the Combine and the Corn Head, allegedly causing damage in the amount of $357,699. *Appellant's App. Vol. 2* at 21. At the time of this property damage, the Combine and the Corn Head were insured under a single Farmowners Policy issued by Farm Bureau. *Appellant's App. Vol. 4* at 7. Farm Bureau provided payment to the Farm for the property damage to the Combine and the Corn Head and then filed a complaint, as subrogee of the Lemlers, against CNH Industrial and Bane-Welker to recover that payment. *Appellant's App. Vol. 2* at 19-25.

[9]     In the complaint, Farm Bureau asserted a product liability claim, seeking tort damages against CNH Industrial and Bane-Welker for the damage to the Combine and the Corn Head. *Id.* Farm Bureau also asserted a breach of implied warranty of merchantability against Bane-Welker and a separate negligence claim against Bane-Welker for improperly servicing the Combine after purchase. *Id.* CNH Industrial and Bane-Welker sought summary

judgment on the product liability claim, arguing the tort claim for property damage to the Combine and the Corn Head was barred by the economic loss doctrine. *Appellant's App. Vol. 3* at 27-29; *Appellant's App. Vol. 4* at 97-100. In response, Farm Bureau conceded that the economic loss doctrine barred any tort claim for property damage to the Combine but asserted that its claim for damage to the Corn Head was not barred by the economic loss doctrine because the Corn Head is considered "other property," which is not precluded from recovery of damages. *Appellant's App. Vol. 3* at 157-160. Bane-Welker also sought summary judgment against the breach of warranty and negligence claims asserted by Farm Bureau, arguing that all implied warranties had been disclaimed and that the negligence claim against it was barred by the economic loss doctrine. *Id.* at 15-37; *Appellant's App. Vol. 4* at 96-108. The trial court granted summary judgment in favor of CNH Industrial and Bane-Welker as to all of Farm Bureau's claims. *Appellant's App. Vol. 2* at 17. Farm Bureau now appeals.

# Discussion and Decision

[10] When reviewing the grant of summary judgment, our standard of review is the same as that of the trial court. *FLM, LLC v. Cincinnati Ins. Co.*, 973 N.E.2d 1167, 1173 (Ind. Ct. App. 2012) (citing *Wilcox Mfg. Grp., Inc. v. Mktg. Servs. of Ind., Inc.*, 832 N.E.2d 559, 562 (Ind. Ct. App. 2005)), *trans. denied*. We stand in the shoes of the trial court and apply a de novo standard of review. *Id.* (citing *Cox v. N. Ind. Pub. Serv. Co.*, 848 N.E.2d 690, 695 (Ind. Ct. App. 2006)). Our review of a summary judgment motion is limited to those materials designated

to the trial court. Ind. Trial Rule 56(H); *Thornton v. Pietrzak*, 120 N.E.3d 1139, 1142 (Ind. Ct. App. 2019), *trans. denied*. Summary judgment is appropriate only where the designated evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. T.R. 56(C). For summary judgment purposes, a fact is "material" if it bears on the ultimate resolution of relevant issues. *FLM*, 973 N.E.2d at 1173. We view the pleadings and designated materials in the light most favorable to the non-moving party. *Id*. Additionally, all facts and reasonable inferences from those facts are construed in favor of the non-moving party. *Id*. (citing *Troxel Equip. Co. v. Limberlost Bancshares*, 833 N.E.2d 36, 40 (Ind. Ct. App. 2005), *trans. denied*). The initial burden is on the moving party to demonstrate the absence of any genuine issue of fact as to a determinative issue, at which point the burden shifts to the non-movant to come forward with contrary evidence showing an issue for the trier of fact. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).

[11] A trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *Henderson v. Reid Hosp. and Healthcare Servs.*, 17 N.E.3d 311, 315 (Ind. Ct. App. 2014), *trans. denied*. We will affirm upon any theory or basis supported by the designated materials. *Id*. When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id*.

# I.    Implied Warranty of Merchantability

[12]    Indiana's version of the Uniform Commercial Code provides:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is, unless excluded or modified under IC 26-1-2-316, an implied warranty that the goods shall be fit for such purpose.

Ind. Code § 26-1-2-315.  The implied warranty of merchantability is imposed by operation of law for the protection of the buyer, and it must be liberally construed in favor of the buyer.  *Gared Holdings, LLC v. Best Bolt Products, Inc.*, 991 N.E.2d 1005, 1013 (Ind. Ct. App. 2013) (citing *Woodruff v. Clark Cty. Farm Bureau Coop. Ass'n*, 153 Ind. App. 31, 43, 286 N.E.2d 188, 194-95 (1972)), *trans. denied*.  Indiana Code section 26-1-2-316 addresses the exclusion or modification of warranties and states in pertinent part:

> (2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

> (3) Notwithstanding subsection (2):

> (a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is," "with all

faults," or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty.

Ind. Code § 26-1-2-316(2), (3)(a).

[13] Farm Bureau argues that the implied warranty of merchantability was not disclaimed by the documents signed by the Farm at the time of purchase of the Combine and the Corn Head. Specifically, Farm Bureau contends that the "as is" language utilized by Bane-Welker was not sufficient to disclaim the implied warranty of merchantability because it did not include the word "merchantability," which is required under Indiana Code section 26-1-2-316(2) and that the word "merchantability" must be used in the disclaimer to be effective. Farm Bureau further asserts that Bane-Welker's attempted disclaimer was not conspicuous because it did not bring the buyer's attention to the language purporting to disclaim the implied warranty of merchantability. Therefore, Farm Bureau maintains that attempted disclaimers used by Bane-Welker did not effectively disclaim the implied warranty of merchantability.

[14] Initially, we note that Farm Bureau also argues that the Sale Contracts, through which the Combine and the Corn Head were financed through CNH Industrial Capital,[2] and the language contained within that purports to disclaim the implied warranty of merchantability, have no impact on the breach of implied

---

[2] Appellee CNH Industrial America, LLC is an entity separate from CNH Industrial Capital.

warranty of merchantability claim because its claim is against Bane-Welker and not CNH Industrial Capital and there is no agency relationship between Bane-Welker and CNH Industrial Capital. Farm Bureau presents no authority for its contention that an agency relationship between Bane-Welker and CNH Industrial Capital must exist in order for the Sale Contracts to be used to prove disclaimer. However, even assuming, without deciding, that the Sale Contract cannot be used to determine if the implied warranty of merchantability has been disclaimed, we conclude that the language contained in the Purchase Order was sufficient to disclaim the implied warranty.

[15] Contrary to Farm Bureau's assertions, Indiana Code section 26-1-2-316 does not require the inclusion of the word "merchantability" to make a disclaimer of the implied warranty of merchantability effective. Although subsection (2) of the statute states that in order "to exclude or modify the implied warranty of merchantability or any part of it[,] the language must mention merchantability," it also provides that the subsection is, "[s]ubject to subsection (3)." Ind. Code § 26-1-2-316(2). Subsection (3) states in pertinent part, "Notwithstanding subsection (2): (a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is,' 'with all faults,' or other language that in common understanding calls the buyer's

attention to the exclusion of warranties and makes plain that there is no implied warranty." Ind. Code § 26-1-2-316(3)(a).[3]

[16] Here, the Purchase Order contained the following provisions, informing the Farm that it must: "1. Read this contract before you sign it;" and "4. The additional terms and conditions set forth *on the reverse side* are a part of this contract and are incorporated herein by reference." *Appellant's App. Vol. 3* at 56 (emphasis added). On the reverse side of the Purchase Order, under the headings, "**WARRANTY**" and "**USED EQUIPMENT**," which were in all caps and bold typeface, the following language appeared: "USED EQUIPMENT covered by this Purchase Order is sold AS-IS, WHERE IS, WITH NO REPRESENTATIONS OR WARRANTIES, other than those stated on the reverse side for equipment 5 years old or newer." *Id*. at 58. The Purchase Order for the Corn Head contained identical language. *Appellant's App. Vol. 4* at 70-71. Under subsection (3) of the statute, this language was sufficient to disclaim the implied warranty of merchantability.

[17] Farm Bureau cites to *Woodruff v. Clark County Farm Bureau Cooperative Association, Inc.*, 153 Ind. App. 31, 286 N.E.2d 188 (Ind. Ct. App. 1972) to support its assertion that the word "merchantability" must be used in order for a disclaimer to be effective. In that case, the seller was found not to have effectively disclaimed the implied warranty of merchantability. *Id*. at 198.

---

[3] We note that subsection (3) also contains (b)-(e), which are not applicable to the present case.

However, contrary to Farm Bureau's assertion that the "*Woodruff* court ultimately found that even though the seller receipt states 'no warranties, express or implied, have been made' and that acceptance was 'as is,' this language was insufficient to disclaim the implied warranty of merchantability as it failed to mention 'merchantability' in the language," *Appellant's Br.* at 14, this was not what the *Woodruff* case held. In that case, the attempted disclaimer did not contain the word "merchantability" as required under Indiana Code section 26-2-1-2-316(2), but it did contain the words "as is," which is allowed under subsection (3). *Id.* at 196. After determining that the "as is" language was contained in the sales receipts given to the buyer, the court went on to ascertain whether the conspicuousness requirement from subsection (2) should apply to the "as is" language requirement under subsection (3). *Id.* The court ultimately determined that the conspicuousness requirement should apply to subsection (3) and found that the language included in the sales receipts was not conspicuous and was insufficient as a matter of law to negate any implied warranties. *Id.* at 198.

[18]  Farm Bureau also argues that the attempted disclaimer language is not conspicuous and, therefore, not effective to disclaim the implied warranty of merchantability. We disagree. "Conspicuous" is defined as:

> A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NONNEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is conspicuous if it is in larger or other contrasting type or color.

Ind. Code § 26-1-1-201(10). "Whether the exclusionary language is 'conspicuous' is a question of law for the court." *Woodruff*, 286 N.E.2d at 197. The purpose of requiring the exclusionary language to be conspicuous is to ensure that the attention of the buyer can reasonably be expected to be brought to the language. *Id*. at 198. In support of its argument, Farm Bureau again cites to *Woodruff*, where the Court held that the language used was not conspicuous because it "was not drawn to the attention of Woodruff at the time of delivery, and . . . there was nothing contained within the body of the purported disclaimers drawing Woodruff's attention to the exclusionary language or making that language conspicuous in and of itself." *Id*. Farm Bureau also contends that the language used by Bane-Welker in the Purchase Order was not conspicuous because it appears on the back side of the Purchase Order and Bane-Welker, through its salesman, Garry, did not advise the Farm of the language on the back side of the document or inform the Farm of the meaning of the language.

[19] The disclaiming language in the Purchase Order was located on the back side of the document, which the Farm signed at the time of purchase. Right above the signature line, there was language that informed the buyer that he should read this contract before signing it and that there were additional terms and conditions set forth on the reverse side that were part of this contract and were incorporated by reference. *Appellant's App. Vol. 3* at 56. On the reverse side of the Purchase Order in the canter of the page, under the headings, "**WARRANTY**" and "**USED EQUIPMENT**," which were in all caps and bold

typeface, the following language appeared: "USED EQUIPMENT covered by this Purchase Order is sold AS-IS, WHERE IS, WITH NO REPRESENTATIONS OR WARRANTIES, other than those stated on the reverse side for equipment 5 years old or newer." *Id.* at 58. The pertinent words "AS-IS, WHERE IS, WITH NO REPRESENTATIONS OR WARRANTIES" were in all caps and larger than the surrounding text and appeared under headings which were in all caps and bold typeface. *Id.* We conclude that the disclaimer language used by Bane-Welker in the Purchase Order was conspicuous as a matter of law, and the language in the Purchase Order effectively disclaimed the implied warranty of merchantability.

## II.    "Other Property" Under the Economic Loss Doctrine

[20] Under the "economic loss doctrine," contract is the sole remedy for the failure of a product or service to perform as expected. *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 152 (Ind. 2005). Indiana law under the Products Liability Act and general negligence law states that where the injury to the plaintiff is from a defective product or service, the defendant is liable under a tort theory if the defect causes personal injury or damage to property other than the product or service itself. *Indianapolis-Marion Cty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 726 (Ind. 2010) (citing *Gunkel,* 822 N.E.2d at 153). Indiana cases further hold that the defendant is not liable under a tort theory for any purely economic loss caused by its negligence (including, in the case of a defective product or service, damage to the product or service itself). *Id.* at 726-27. Therefore, the "economic loss doctrine" precludes tort liability for purely

economic loss -- that is, pecuniary loss unaccompanied by any property damage or personal injury (other than damage to the product or service itself). *Id*. The doctrine "reflects that the resolution of liability for purely economic loss caused by negligence is more appropriately determined by commercial rather than tort law." *Id*. at 729. As our Supreme Court observed in *Gunkel,* "The central theory underlying 'economic loss' is that the law should permit the parties to a transaction to allocate the risk that an item sold, or a service performed does not live up to expectations." *Gunkel*, 822 N.E.2d at 155.

[21] "[C]ontract law governs damage to the product or service itself and purely economic loss arising from the failure of the product or service to perform as expected." *Id.* at 153. "Indiana law under the Products Liability Act and under general negligence law is that damage from a defective product or service may be recoverable under a tort theory if the defect causes personal injury or damage to *other* property, but contract law governs damage to the product or service itself and purely economic loss arising from the failure of the product or service to perform as expected." *Id.* (emphasis added). In *Gunkel*, our Supreme Court explored what constitutes "other property" and "aligned [itself] with the courts that have concluded that the 'product' is the product purchased by the plaintiff, not the product furnished by the defendant." *Id*. at 154-55.

[22] Farm Bureau contends that the Corn Head is "other property," and, therefore, the damages to it should be recoverable under a tort theory and not precluded under the economic loss doctrine. Because the Corn Head should be considered to be "other property," Farm Bureau asserts that it can pursue a

products liability claim against CNH Industrial, and the trial court erred in granting summary judgment on its claim against CNH Industrial. Although Indiana courts have not yet determined how the economic loss doctrine and the "other property" exception should apply to farm equipment, Farm Bureau maintains that the cases in which the courts have applied this area of the law in the context of consumer products and buildings provide guidance on how this issue of first impression should be determined.

[23] Farm Bureau relies on two Indiana cases to support its argument, *Gunkel* and *Guideone Insurance Co. v. U.S. Water Systems, Inc.*, 950 N.E.2d 1236 (Ind. Ct. App. 2011). In *Gunkel*, the plaintiffs contracted with Renovations, Inc., for the construction of a home, and six months later, the plaintiffs contracted with a different company, J&N Stone, to install a stone façade on the home. 822 N.E.2d at 151. After water entered through gaps in the stone façade, the plaintiffs sued J&N for negligence, seeking to recover for damage to walls, ceilings, doors, floors, drywall, carpet, and carpet padding caused by the leaking façade. *Id*. J&N sought summary judgment on the ground that the plaintiffs sought purely economic damages, which were not available under a negligence theory. *Id*. at 152. The trial court granted summary judgment for J&N. *Id.* On transfer, our Supreme Court concluded that the plaintiffs could not recover in tort for damages to the façade itself, but could recover in tort for damage to the other parts of the home as damage to "other property," aligning itself with the courts that have concluded that "the 'product' is the product purchased by the plaintiff, not the product furnished by the defendant." *Id.* at 155-57. The

Supreme Court found that the product or service purchased from J&N was the stone façade added to the exterior of the plaintiffs' home and that J&N installed the façade under an arrangement with the plaintiffs that was independent of the contract with Renovations, Inc. to build the home. *Id.* at 156.

[24]     In *Guideone*, the homeowners purchased a water system and had it installed in their home. 950 N.E.2d at 1239-40. Shortly after installation, the water system leaked and caused water damage to the home, and after compensating the homeowners, their insurance company sought subrogation from the retailer and the installer of the water system. *Id.* at 1240. The installer moved to dismiss, contending that the economic loss doctrine precluded recovery, which the trial court granted. *Id.* at 1241. A panel of this court found that the trial court erred in granting the motion to dismiss because, although the economic loss doctrine would preclude recovery for damage to the water system itself, the "other property" exception permitted recovery for the flood damage to the home because the damaged parts of the home were acquired separately from the water system and were separate and distinct items from the water system. *Id.* at 1245.

[25]     Our Supreme Court again had an opportunity to decide a case involving the economic loss doctrine and the "other property" exception in *Indianapolis-Marion County Public Library*. There, the Library contracted with multiple entities to renovate and expand its downtown Indianapolis library facility, and after significant construction had occurred, it learned the accompanying parking garage contained construction and design defects that cost the Library forty to fifty million dollars to cure. 929 N.E.2d at 725. The Library brought a

lawsuit against the various different architects, general contractors, and engineers alleging negligence, and the defendants argued the negligence claims against them were barred by the economic loss doctrine. *Id*. at 726. In its opinion finding that the economic loss doctrine did apply to bar the claims, our Supreme Court recognized that *Gunkel* agreed with other courts that had concluded that the "product" is the product purchased by the plaintiff, not the product furnished by the defendant and reasoned:

> "[o]nly the supplier furnishing the defective property or service is in a position to bargain with the purchaser for allocation of the risk that the product or service will not perform as expected. If a component is sold to the first user as a part of the finished product, the consequences of its failure are fully within the rationale of the economic loss doctrine. It therefore is not 'other property.'"

*Id.* at 731 (citing *Gunkel*, 822 N.E.2d at 154). The Supreme Court found that the product purchased by the Library was a complete renovation and expansion of all the components of its facility as part of a single, highly-integrated transaction. *Id.* The Court further held that the product "purchased from the Defendants was an integral part of the entire library construction project, not independent from it. Any damages alleged to have resulted from the Defendants' negligence were to the 'product' the Library purchased, not to 'other property.' The economic loss doctrine applies." *Id.* at 732.

[26] In applying Indiana law regarding the "other property" exception, the question is what product was purchased by the Farm. Here, the Farm purchased a

Combine and Corn Head to be used to harvest corn. The Farm purchased both the Combine and the Corn Head from the same seller, and both the Combine and the Corn Head were manufactured by the same manufacturer. In the months leading up to the 2015 Harvest Season, the Farm purchased the Combine in January and the Corn Head in August. Therefore, although the Combine and the Corn Head were purchased several months apart, the Farm contracted with the same seller to purchase equipment for the stated purpose of harvesting corn. Testimony established that without an attached Corn Head, the Combine cannot harvest corn,[4] and although the Combine itself can be driven without a Corn Head, it is worthless for harvesting corn without a Corn Head.[5] The product purchased by the Farm was a functioning Combine and the Corn Head was intended to be part of that bargained-for product.

---

[4] "Q: In particular, if you're harvesting corn, you're not going to be able to harvest corn without a corn head? A: That's correct." *Appellant's App. Vol. 3* at 91-92.

[5] Q: In other words, if you drove a combine through a field and it didn't have a corn head on it in the cornfield, you couldn't do anything with it?

A: You're wasting your time.

*Appellant's App. Vol. 3* at 81-82.

Q: [I]f no implement is attached to the front of that combine, you can drive it around the field, right?

A: Sure.

Q: [But] It's not going to do anything?

A: It's not going to do anything.

Q: So you need some sort of implement attached to the front, right?

A: Correct.

*Id.* at 91-92.

"The theory underlying the economic loss doctrine is that the failure of a product or service to live up to expectations is best relegated to contract law and to warranty either express or implied." *Gunkel,* 822 N.E.2d at 155. The expectation here was that the Farm would obtain a working combine and corn head to use to harvest corn for its commercial farm business. It, therefore, purchased both the Combine and the Corn Head from Bane-Welker with the intent to use them for that purpose. However, the Combine caught fire, and the damages incidental to this fire, were a disappointed commercial expectation of properly functioning farm equipment. The Corn Head and Combine were thus "an integral part" of the harvesting equipment purchased by the Farm. *See Indianapolis-Marion Cty. Pub. Library*, 929 N.E.2d at 732 (finding the product "purchased from the Defendants was an integral part of the entire library construction project, not independent from it."). Accordingly, any damages alleged to have resulted from the fire "were to the 'product' the [Farm] purchased, not to 'other property.'" *Id*. We, therefore, conclude that the Corn Head is not "other property," and the economic loss doctrine applies, thus barring Farm Bureau's recovery of tort claim damages against CNH Industrial.

## III. Negligent Service Claim

Farm Bureau argues that the economic loss doctrine does not apply to its claims of negligence against Bane-Welker for the improper service of the Combine. Farm Bureau contends that Bane-Welker regularly performed service and maintenance on the Combine and was negligent in this service because Bane-Welker did not inform the Farm of known problems with the chopper bearings

or recommend additional maintenance to address the problems. *Appellant's Br.* at 25. Farm Bureau, therefore, argues that its claim against Bane-Welker for the negligent servicing of the Combine are separate from its claims under the Products Liability Act and not barred from the economic loss doctrine. Because this claim is not barred, Farm Bureau alleges that summary judgment was not appropriate for this negligence claim because Bane-Welker did not present evidence to show that the company met its duty of care and the resolution of the negligent servicing claim is a question of fact for the jury.

[29] "The central theory underlying 'economic loss' is that the law should permit the parties to a transaction to allocate the risk that an item sold, or a service performed does not live up to expectations." *Gunkel*, 822 N.E.2d at 155. The economic loss doctrine is not limited to the sale of goods. *Id.* "In general, a claim that a product or service did not perform as expected is best left to contract law remedies." *Id.* Therefore, Indiana law holds that "a defendant is not liable under a tort theory for any purely economic loss caused by its negligence (including, in the case of a defective product or service, damage to the product or service itself)." *Indianapolis-Marion Cty. Pub. Library*, 929 N.E.2d at 726-27.

[30] Here, Farm Bureau is contending that a service performed by Bane-Welker, the maintenance of the Combine, was performed negligently and did not live up to expectations. However, "a claim that a product or service did not perform as expected is best left to contract law remedies." *Gunkel*, 822 N.E.2d at 155. We,

therefore, conclude that Farm Bureau's claims of negligent servicing are barred by the economic loss doctrine.

[31] In conclusion, after a review of the record and the applicable law, we find that Bane-Welker properly disclaimed the implied warranty of merchantability with the language used in the Purchase Order. We also conclude that the Corn Head is not "other property," and therefore, the economic loss doctrine applies to bar Farm Bureau's recovery of tort claim damages. Further, Farm Bureau's claim of negligent servicing against Bane-Welker is barred by the economic loss doctrine. The trial court did not err in granting summary judgment in favor of Bane-Welker and CNH Industrial.

[32] Affirmed.

Riley, J., concurs.

Robb, J., concurs in part and dissents in part with separate opinion.

| | |
|---|---|
| Indiana Farm Bureau as Subrogee of Chester Lemler, Garry Lemler, and Zak Lemler, | Court of Appeals Case No. 18A-PL-2368 |
| *Appellant-Plaintiff,* | |
| v. | |
| CNH Industrial America, LLC and Bane-Welker Equipment, LLC, | |
| *Appellees-Defendants,* | |

**Robb, Judge, concurring in part and dissenting in part.**

[33]     I concur with the majority in Part I of the opinion, and I believe this case is resolved in full by the decision that the implied warranty of merchantability for the Combine and Corn Head was effectively disclaimed. *See* slip op. at ¶ 19. Therefore, I would not address the merits of Parts II and III.

[34]     Independent of the fact I do not believe Part II is a live issue, if I were compelled to express my opinion, I would disagree with the majority's conclusion that the Corn Head is not "other property." *See* slip op. at ¶ 27. The Combine and Corn Head were purchased from the same place, but not at the same time. They were being used together when the Combine caught fire, but

they are independent implements: the Combine could be used with other headers; the Corn Head could be used with other combines. In other words, although neither implement could effectively be used alone to harvest corn, they did not have to be used exclusively with each other. For these reasons, if I were to consider the economic loss doctrine issue, I would hold the Corn Head *is* "other property" not subject to the economic loss doctrine. *See Gunkel*, 822 N.E.2d at 155 ("[P]roperty acquired separately from the defective good or service is 'other property,' whether or not it is, or is intended to be, incorporated into the same physical object.").

As for Part III, again, I would not address the issue, but I do not otherwise disagree with the majority's analysis.